182 N.J. Super. 136 (1981)
440 A.2d 82
VINCENT QUAGLIETTA, POLICE BENEVOLENT ASSOCIATION, LOCAL 114, HAROLD ENGOLD, JR., JOHN GAMBLE, DAVID SUTTON, AND NEW JERSEY STATE ASSOCIATION OF CHIEFS OF POLICE, PLAINTIFFS,
v.
BOROUGH OF HALEDON, DEFENDANT.
Superior Court of New Jersey, Law Division Passaic County.
Decided November 16, 1981.
*138 Alfred J. Villoresi for plaintiffs (Villoresi & Buzak, attorneys).
James F. Avigliano for defendant.
ROMEI, J.J.D.R.C. (temporarily assigned).
On March 30, 1981 the governing body of the Borough of Haledon adopted Ordinance 3-11-81 which established the office of "Director of Police." Chief Vincent Quaglietta, the local Police Benevolent Association, the New Jersey State Association of Chiefs of Police and three police officers reacted by the *139 institution of this prerogative writ action wherein they attacked the validity of the ordinance. Their application for ad interim injunctive relief to enjoin the appointment of a police director was granted pursuant to R. 4:69-3.
Ordinance 3-11-81 was subsequently repealed and replaced by Ordinance 6-10-81 during the pendency of these proceedings. This ordinance was adopted on June 25, 1981. The stated purpose for the enactment of the revised ordinance, which again established the office of "Director of Police," was to grant to the director "only those powers which derive in the powers given to the governing body." Defendant then moved for summary judgment and for the vacation of the preliminary restraint. The motions were denied on July 15, 1981. Ordinance 6-10-81 and, specifically, those provisions thereof which relate to the office of the Director of Police, is now the subject matter of this litigation.
The court makes the following findings of fact  all by a preponderance of the credible evidence adduced at the trial:
(1) The Haledon police chief does not occupy a statutory office.
(2) Chief Quaglietta was duly appointed police chief on March 12, 1980.
(3) Chief Quaglietta acquired tenure of office during good behavior immediately upon his appointment, pursuant to N.J.S.A. 40A:14-128.
(4) At the time of his appointment the police chief derived his powers and duties from Ordinance 11-16B-64, adopted on December 7, 1964. Under the terms of this ordinance and, specifically, in § III thereof, he alone was in "sole and complete control over the Department, its members and property, subject only to the governing body of the municipality and the Police Committee." Further powers and duties which devolved upon the office of police chief are more particularly set forth in §§ IV and V of the ordinance. They included preservation of the "public peace," the enforcement of "all the laws and ordinances," *140 the obligation to insure that the "police officers under him" obey "the Police rules prescribed by the Police Committee" and that "they perform their duties promptly, efficiently and faithfully," determination of "the beats, tours and nature of duty of the patrolmen" and the monthly submission of "a comprehensive report of the operation of the Police Department and recommendations for improvements" to the mayor and council.
(5) Ordinance 6-10-81 now provides in § I that the police department shall consist of a "Director of Police, a Chief of Police ..." and other specified superior officers and patrolmen. And, in § IV thereof, now, "The Chief of Police shall exercise sole and complete control over the Department, its members and property, subject only to the governing body of the municipality and the Police Committee and the Director of Police." Further, in § III thereof, it is the Director of Police who now shall "hold and exercise all of the authority and functions of a Department Head." Also, in § III, it is the Director who is constituted "the final authority in all matters of policy, operations and discipline." It is the Director who now "shall supervise and train all personnel," and it is he who now shall "Cooperate with county, state and federal law enforcement authorities in the enforcement of laws and furtherance of public safety" within the borough. And, in § VI, the Director is required to submit monthly "a comprehensive report of the operation of the Police Department and recommendations for improvements in its operation" to the mayor and council.
(6) Dissatisfaction with Chief Quaglietta's performance developed within months of his appointment. At the trial Mayor Sibilio testified that the chief was not "handling the police department in the proper way," "leadership was lacking" and he wasn't getting the cooperation from him that he had expected." Further, the mayor related various problems in the police department, including alleged factionalism, alleged political involvement, alleged improper maintenance of vehicles, alleged excessive use of gasoline, alleged excessive overtime, alleged *141 poor law enforcement, alleged favoritism and the alleged improper use of the vehicle assigned to the chief. These "problems" led the mayor to request the chief's resignation in July 1980. According to the mayor, "conditions were getting worse and worse by the day." Thus, the mayor, in early 1981, publicly stated that "the only solution to get leadership" was the appointment of a police director. The police chief in turn, related his complaints which included the request of the mayor for his resignation "because he felt I belonged on the road as a patrol officer." He, too, expressed numerous complaints, including interference by the mayor and the police committee with his operation of the department. Clearly, the provisions of Ordinance 6-10-81, relating to the office of "Director of Police," were intended to and do in substance displace Chief Quaglietta as the functioning police chief of the Haledon Police Department. Theretofore, he alone had been in sole control and charge of his department, subject only to the general over-all control of the governing body and its police committee. Now he is no longer in control of the department since he is subject to the over-all control and direction of the proposed police director. The implementation of this ordinance will result in the demotion of the chief.
Plaintiffs contend that the provisions of the ordinance which relate to the office of "Director of Police" are invalid because (1) the police chief is stripped of his powers without just cause and without a hearing; (2) the governing body attempted to grant police powers to the director in direct contravention of several statutes which grant these powers to police chiefs only and (3) the sections challenged were rendered invalid by the enactment of the recent amendment to N.J.S.A. 40A:14-118, effective on August 24, 1981, entitled, "An act concerning municipal police forces and chiefs thereof and amending N.J.S.A. 40A:14-118." Defendant maintains that the provisions of the ordinance under attack are in fact legal and valid. Reliance is placed upon Jansco v. Waldon, 70 N.J. 320 (1976), for the contention that the municipality does have the legal power "to authorize the police *142 director to act in the place of the governing body." Further, it is argued that the proposed displacement of the police chief cannot be considered a demotion since he does not occupy a statutory office. For this contention defendant relies upon Smith v. Hazlet Tp., 63 N.J. 523 (1973). Also, the borough asserts that the recent amendment to N.J.S.A. 40A:14-118 cannot affect the legal power of the governing body to create the position of director because the application of the statute is "prospective only" and thus is not applicable to an ordinance adopted prior to August 24, 1981.
The Haledon Police Department was established in 1908 by ordinance which was thereafter amended and supplemented by Ordinance 11-16B-64 pursuant to N.J.S.A. 40:47-1, which authorized governing bodies "to establish, maintain, regulate and control a police department and force." This enactment was repealed in 1971 and replaced by N.J.S.A. 40A:14-118 which is not significantly different from the legislation it replaced. The chief of police derives no power or authority directly from the statutes. Smith v. Hazlet Tp., supra. His powers instead are derived from Ordinance 11-16B-64 which was adopted by the governing body in the exercise of its statutory power. It is true that the powers granted to the police chief by ordinance are powers which reside in the governing body. Consequently, the governing body does have the legal authority to abolish the office of police chief and to retake and assume these powers. However, it cannot divest the functioning police chief of his powers and then transfer them to another person known as the "Director of Police" because of the provisions of N.J.S.A. 40A:14-128 and N.J.S.A. 40A:14-147.
Upon his appointment Chief Quaglietta acquired tenure in office by virtue of N.J.S.A. 40A:14-128, which mandates that such employment "shall be indeterminate and continuous during good behavior and efficiency." And, N.J.S.A. 40A:14-147 provides that no permanent officer of a police force shall be removed from his office "for political reasons or for any cause *143 other than incapacity, misconduct, or disobedience of rules and regulations." The statute further provides, "nor shall such ... officer be suspended, removed, fined or reduced in rank from or in office ... except for just cause ... and then only upon written complaint setting forth the charge or charges." (Emphasis supplied). Ordinance 6-10-81 would displace the police chief and divest him of his powers, and he would then be subject to a director who would be vested with the powers theretofore attached to his office. Such action would reduce the chief in rank and would in effect constitute a demotion. This the governing body cannot do. A police chief cannot be stripped of all his powers without just cause and without a hearing. Smith v. Hazlet Tp., supra at 529-530; Edelstein v. Asbury Park, 12 N.J. Super. 509 (App.Div. 1951); McGonnell v. Orange, 98 N.J.L. 642 (Sup.Ct. 1923); Harrington v. Carteret, 1 N.J. Misc. 167 (Sup.Ct. 1923); Vandervalk v. Hawthorne, 8 N.J. Misc. 741, 151 A. 489 (Sup.Ct. 1930). Mayor Sibilio, and apparently the Haledon council, are dissatisfied with the performance of Chief Quaglietta. The alleged lack of "leadership" and other complaints expressed by the mayor cannot justify the displacement of the police chief. If, in fact, there is cause for the removal or demotion of the chief, then the procedure established by the Legislature in N.J.S.A. 40A:14-147 must be followed. The chief cannot be demoted or removed from his office without just cause and without procedural and substantive due process. Accordingly, the provisions of the ordinance in question which attempt to supercede the police chief must be deemed illegal, invalid, null and void.
Defendant's reliance upon Smith v. Hazlet Tp. and Jansco v. Waldon, both supra, is misplaced. The issue in Smith was whether the governing body had the power to restructure the police department and to assign police sergeants. That case held that these powers were vested in the governing body and not the police chief whose powers were derived not from a statutory office but from the governing body. Nor is Jansco applicable to our factual situation. There the governing body of *144 Trenton (a Faulkner Act city) authorized its Director of Public Safety to promulgate rules for the regulation and discipline of the police officers. That case does not and cannot support defendant's contention that the governing body is merely authorizing the director to exercise its powers. The governing body is not attempting to exercise its powers. It is attempting to displace the police chief, in contravention of the tenure statutes.
Further, the provisions of Ordinance 6-10-81 relating to the "Director of Police" are in direct conflict with the recent statutory amendment to N.J.S.A. 40A:14-118. Prior to August 24, 1981 this statute empowered a governing body to establish a police department, appoint its members, prescribe their duties and functions and adopt rules and regulations for the government of the department. This statute has now been amended and substantially revised. The effective date of this new legislation is August 24, 1981. The relevant portions of the amended statute provide:
The governing body of any municipality, by ordinance, may create and establish as an executive and enforcement function of municipal government, a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof. Any such ordinance, shall, in a manner consistent with the form of government adopted by the municipality and with general law, provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members. The ordinance may provide for the appointment of a chief of police... Any such ordinance or rules and regulations, shall provide that the chief of police, if such position is established, shall be the head of the police force and that he shall be directly responsible to the appropriate authority for the efficiency and routine day to day operations thereof, and that he shall, pursuant to policies established by the appropriate authority:
a. Administer and enforce rules and regulations and special emergency directives for the disposition and discipline of the force and its officers and personnel;
b. Have, exercise and discharge the functions, powers and duties of the force;
c. Prescribe the duties and assignments of all subordinates and other personnel;
d. Delegate such of his authority as he may deem necessary for the efficient operation of the force to be exercised under his direction and supervision; and
e. Report at least monthly to the appropriate authority in such form as shall be prescribed by such authority on the operation of the force during the *145 preceding month, and make such other reports as may be requested by such authority.... [L. 1981, c. 266; emphasis supplied]
Significantly, this legislative enactment pertains directly to the subject matter of this litigation. A review of "the language in which the act is framed" discloses a plain meaning. If the meaning is plain, then "it is the sole function of the courts to enforce it according to its terms." Sheeran v. Nationwide Mutual Ins. Co., Inc., 80 N.J. 548, 556 (1979). Also, in construing this legislative enactment the court may consider the legislative history in order to ascertain the legislative purpose and plan. N.J. Pharmaceutical Ass'n v. Furman, 33 N.J. 121, 130. An examination of the statute and the legislative history, as more particularly set forth in the Statements attached to the Senate and Assembly bills, discloses a clear legislative intent and purpose. This legislation was enacted for the following purposes: (1) to provide for a line of authority with respect to the exercise of the police function in municipalities; (2) to establish the police force as an executive and enforcement function of municipal government; (3) to grant municipalities the sole option of determining whether to establish the position of police chief; (4) to grant statutory powers to police chiefs by mandating that they shall be in charge of their departments and providing for their specific duties and responsibilities, but only in those instances where the position of police chief is established by the municipal governing body; (5) to prevent interference by elected officials individually in the operation of the police force and (6) to designate the "appropriate authority" to exercise regulatory power over the police function in each form of government. It is evident that the Legislature has withdrawn from municipalities the authority and power to prescribe the duties of police chiefs if such a position is established. This the Legislature can do because municipalities are merely political subdivisions of the State and legislative control over them is virtually unlimited. Becker v. Adams, 37 N.J. 337, 340 (1962).
The provisions of Ordinance 6-10-81 relating to the "Director of Police" are in direct conflict with the statute in *146 question. Where there is a conflict between a statute and an ordinance, the latter must give way. 6 McQuillin, Municipal Corporations, (3 Ed.), § 21.32 at 240. Nonetheless, defendant contends that the application of the statute is intended to be "prospective" only and therefore it cannot affect the validity of Haledon's ordinance adopted prior thereto. It is a "cardinal rule in the interpretation of statutes that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied." Kopczynski v. Camden Cty., 2 N.J. 419, 424 (1949). Nonetheless, this is no more than a rule of statutory interpretation. Where "supervening considerations clearly compel a contrary determination, this, like all other rules of statutory construction must give way." Rothman v. Rothman, 65 N.J. 219, 224 (1974). The legislative purpose is clearly expressed. Municipal police departments are now established "as an executive and enforcement function" for the purpose of preventing improper interference with this governmental function. If a governing body determines to establish the position of police chief, he "shall be the head of the police force" and he has specified statutory powers, duties and responsibilities which cannot be interfered with. The police chief is responsible only to the "appropriate authority" which, in Haledon's form of government (Borough Form pursuant to N.J.S.A. 40:86-1 et seq.), is the governing body "or any designated committee or member thereof."
The Legislature has adopted a specific plan for the operation of municipal police departments. The act is all-inclusive and applicable to all municipalities. It was clearly intended to insure that all police departments would function in the same professional manner. If the act were to be applied only prospectively, the legislative plan would be frustrated because virtually all municipalities already have police departments and police chiefs. A prospective application of the statute would not accomplish the expressed objectives of the Legislature. The *147 statute therefore must be given retrospective effect. Further, the Legislature does have the power to modify or repeal ordinances. The provisions of Ordinance 6-10-81 are in direct conflict with the statute and thus they are impliedly repealed. 6 McQuillin, op. cit., § 21.32 at 240.
The provisions of the ordinance pertaining to the "Director of Police" are legally invalid because they attempt to interfere with the "line of authority" from the police chief directly to the governing body by the interposition of a police director to whom the police chief would be subordinate; they attempt to negate the statutory mandate which requires that the police chief "be the head of the police force" and they attempt to divest the police chief of powers which he now possesses by statute.
It is not necessary to consider plaintiffs' additional contention that provisions of the ordinance are in contravention of statutes such as N.J.S.A. 2C:58-3(d) (permits for firearms) and N.J.S.A. 40A:14-146 (supervision of special police) because of the determination that the provisions of the ordinance under attack are indeed invalid for the reasons already stated.
The only other remaining issue is whether the entire ordinance should be adjudged invalid. Ordinance 6-10-81 contains other provisions relating to the police department, including a table of organization, requirements for appointment to the force, rules governing the police department, etc. It does contain a severability clause. The invalidity of the provisions challenged does not affect the enforceability of the remaining sections of the ordinance since they are clearly severable. Brunetti v. New Milford, 68 N.J. 576, 603 (1975).
In conclusion, then, the following portions of Ordinance 6-10-81 are adjudged and declared to be illegal, invalid, null and void: (1) that portion of § I which establishes a "Director of Police"; (2) all of § III; (3) that portion of § IV which makes the police chief subject to a "Director of Police"; (4) that portion of § V which refers to a "Director of Police"; (5) all of § VI and (6) that portion of § IX which refers to "Director of Police." These *148 sections are adjudged and declared to be illegal, invalid, null and void for the reasons above set forth.