194 N.J. Super. 468 (1984)
477 A.2d 381
RICHARD H. GAUNTT, PLAINTIFF-APPELLANT,
v.
MAYOR AND COUNCIL OF THE CITY OF BRIDGETON, IN THE COUNTY OF CUMBERLAND, THE CITY OF BRIDGETON AND DONALD MAURER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 16, 1984.
Decided June 20, 1984.
*470 Before Judges MORTON I. GREENBERG and TRAUTWEIN.
Alfred J. Villoresi argued the cause for appellant (Stephen H. Shaw, on the brief).
*471 Michael Brooke Fisher argued the cause for respondents (Lummis, Fisher & Krell, attorneys; Michael Brooke Fisher, on the brief).
The opinion of the court was delivered by TRAUTWEIN, J.A.D.
Richard H. Gauntt, the Chief of Police of the City of Bridgeton, appeals from an order dismissing his complaint in lieu of prerogative writs which sought the entry of a restraining order against the city's director of the Department of Police and Fire from further interference with plaintiff's duties as chief of police. Plaintiff argues that the trial judge erred in dismissing his complaint because the actions of the director constituted an improper infringement upon the duties and responsibilities granted to a chief of police pursuant to N.J.S.A. 40A:14-118. Plaintiff further contends that the director's attempt to divest him of his duties as chief of police constitutes a demotion in rank in violation of N.J.S.A. 40A:14-147.
On December 29, 1981 plaintiff, as chief of police of the City of Bridgeton, filed a complaint in lieu of prerogative writs in the Superior Court, Law Division, against the City of Bridgeton, its mayor and council, and the director of Bridgeton's Department of Police and Fire, Donald Maurer. Count I of the complaint alleged that Ordinance No. 71-10 of the City of Bridgeton created the position of chief of police and placed the chief in charge of the police department, subject to direction. This ordinance also set forth the chief's duties which included formulating rules and regulations for the police department, determining the department's internal organization and assigning its members. The complaint also alleged that Section 2-10.1 of the Revised Ordinances of the City of Bridgeton established a Department of Police and Fire which included the Division of Police; that defendant Maurer, the director of the Department of Police and Fire, had on numerous occasions transferred police personnel and interfered with plaintiff's powers *472 to assign police personnel to specific hours and duties thereby violating Ordinance No. 71-10. It was further alleged that by exercising these powers, defendant Maurer deprived plaintiff of the privilege of exercising the duties of his office and had in effect removed plaintiff from his office or reduced him in rank in violation of N.J.S.A. 40A:14-147. Thus plaintiff demanded that defendant Maurer be restrained from exercising any of the powers or duties given to the chief of police by Ordinance No. 71-10.
Count II of the complaint alleged that by letter dated September 22, 1981, defendant Donald H. Rainear, mayor of the City of Bridgeton, issued "policy directives" which purported to amend the rules and regulations governing the Division of Police. Said "policy directives" provided that no interdivisional assignments or transfers shall be made without prior approval of the director of the department of police and fire and excluded the chief of police from those persons eligible to act as hearing officers in police disciplinary matters. Plaintiff demanded that the amendment to the rules and regulations created by the mayor's letter be declared null and void as being in direct contravention of N.J.S.A. 40A:14-118 which sets forth the powers and duties of police chiefs.
Count III of the complaint alleged that the director of the Department of Police and Fire was exercising powers and performing duties which may only be exercised and performed by a chief of police pursuant to N.J.S.A. 40A:14-118. Thus, plaintiff demanded that the director of the Department of Police and Fire be enjoined from exercising any of the functions granted to a chief of police by N.J.S.A. 40A:14-118.
Thereafter, plaintiff and defendant filed cross-motions for summary judgment. Following oral argument, the trial judge entered an order on September 17, 1982 denying both motions.
Trial was held on April 26, 1983. The trial judge issued a written opinion on June 23, 1983 wherein he found that the actions of the director of the Department of Police and Fire *473 were "... entirely proper and within the framework of his proper sphere ..." Accordingly, an order was entered on July 5, 1983 dismissing the complaint with prejudice.
Plaintiff filed his notice of appeal on August 22, 1983.
The record discloses that the City of Bridgeton is a Faulkner Act Community with a mayor-council form of government. (N.J.S.A. 40:69A-1 et seq.) The executive power is exercised by Mayor Donald H. Rainear, who has been mayor of the city since July 1, 1978. The city has nine departments and the mayor has the power to appoint and remove the department heads subject to confirmation by the city council. In turn, the department heads have the authority to appoint and remove employees within their departments subject to the mayor's approval.
Section 2-10.1 of the Revised Ordinances of the City of Bridgeton, dated November 4, 1970, provides for a Department of Police and Fire, the head of which shall be a director. Section 2-10.2 of the Revised Ordinances provides that the division of police shall be organized according to such table of organization as shall be prescribed by the director with the approval of the mayor.
On October 19, 1971, the Bridgeton City Council adopted Ordinance No. 71-10 which created the position of police chief and repealed all prior inconsistent ordinances. The Department of Civil Service, at the request of the city council, prepared a schedule of the civil service positions within the city with their accompanying duties. This schedule of duties was adopted by the city council in Ordinance No. 71-10 as the appropriate duties to be performed by individuals holding civil service positions within the city. Pursuant to this ordinance, the position of police chief was defined as follows: "Under direction, has charge of the Police Department; does related work as required." Among the examples of work to be performed by a police chief are the giving of assignments to other members of the police department; planning police work so as to make the best use of available funds, personnel and equipment; determining *474 the internal organization of the department and formulating police rules and regulations.
Effective August 24, 1981, N.J.S.A. 40A:14-118 was amended to provide that the governing body of any municipality may provide by ordinance for the appointment of a chief of police. If a chief of police is appointed, he shall be the head of the police force and shall be directly responsible to the appropriate authority for the efficiency and routine day-to-day operations of the force. Id. Moreover, pursuant to policies established by the appropriate authority, the chief of police shall administer and enforce rules and regulations for the discipline of the force and prescribe the duties and assignments of all subordinates. N.J.S.A. 40A:14-118(a) and (c).
Plaintiff has been the chief of police of the City of Bridgeton since November 23, 1977. Defendant Donald Maurer has been the part-time director of the City of Bridgeton's Department of Police and Fire since July 1978.
During his testimony, plaintiff set forth various examples of alleged interference by defendant Maurer in the performance of plaintiff's powers and duties as police chief. Plaintiff related an incident which occurred in November 1981 concerning the discovery that certain monies were missing from a safe located in the violations clerk's office. By letter dated November 10, 1981, Maurer informed plaintiff that he had assigned Detective Turner to "complete the investigation." Plaintiff had no prior knowledge of the investigation or assignment.
According to plaintiff, there have been several other instances when Maurer has made assignments and transfers of police officers in the City of Bridgeton in violation of N.J.S.A. 40A:14-118. Thus, plaintiff pointed to a letter dated March 5, 1982 which Maurer sent to the Public Safety Director of the City of Salem stating the following:
I am most happy to allow Lieutenant Erianne and Detective Turner (to) address your Neighborhood Crime Watch group on Wednesday, March 24, 1982. Lieutenant Erianne and Detective Turner have been involved in organizing and coordinating a Neighborhood Crime Watch Program in Bridgeton for approximately *475 one year and I am sure the experience they have gained will be helpful to you and your department.
As another example, plaintiff referred to a letter dated March 18, 1982 which he wrote to Maurer wherein he stated:
In reference to our meeting and discussion of March 17, 1982, I wish to state for the record that I disagree with your decision and order placing Lieutenant Erianne in charge of the Detective Division.
As I stated to you, it was my intent, after careful review of the matter, to transfer Lieutenant Bondi to that position placing Lieutenant Erianne in charge of the Uniform Division.
I also wish to state for the record that this is in violation of my rights and privileges under N.J.S. 40A:14-118.
Plaintiff also pointed to a written directive which he received from Maurer dated February 1, 1983, which stated the following:
It has been brought to my attention that staff members of the Community Health Center are victims of verbal abuse, harassment, and general havoc during the V.D. Clinic which is held Wednesday from 4:30 to 5:30 P.M. Beginning Wed. Feb. 2nd an officer should be assigned to be present at the Clinic during those hours for a week or two and if that helps improve the situation, a periodic visit may surfice [sic] in the future.
Mayor Rainear explained that he had received complaints regarding the V.D. clinic and that he issued a "policy directive" to Maurer to provide police coverage at the clinic.
Plaintiff also testified as to a couple of instances when Maurer made assignments of police officers in the City of Bridgeton which occurred prior to the effective date of the amendment to N.J.S.A. 40A:14-118. Thus, plaintiff focused on a memorandum dated November 5, 1980 wherein Maurer advised him of the following:
In regards to your order dated November 3, 1980, on the reassignment of Officers Denby and Everingham. As we discussed at our Friday afternoon meeting on the 31st, I wanted the Officers assigned every other week. One week to be in the second ward area then split up in Safe Streets areas one (1) and three (3) on the opposite week. As I read your order it would appear you have them assigned permanently to areas one (1) and three (3).
Please correct this situation as of nexts [sic] weeks time to report to duty for the two officers.
Plaintiff also referred to a memorandum dated February 18, 1981, wherein Maurer stated:

*476 Spoke to Lieutenant Erianne in regards to the Neighborhood Watch Program in the 4th Ward and have assigned him to familiarize [sic] and prepare himself to set the program into operation in the 4th Ward area.
Mayor Rainear and Director Maurer explained that this assignment was necessary because although the mayor had requested plaintiff to institute a neighborhood watch program in 1978 or 1979, plaintiff and other superior officers in the police department were not "committed" to the program and it was not being implemented.
According to plaintiff, Maurer also interfered with his assignments of police officers to various police training schools. Thus, by letter dated December 16, 1981, Maurer advised plaintiff that "[d]ue to the internal investigation related to the Morrison case, Det. Turner was pulled out of Homicide School in early December." Plaintiff had no knowledge prior to his receipt of this letter that Detective Turner was no longer attending school. Similarly, by letter dated April 12, 1982, Maurer informed plaintiff that he saw no reason for Detective Turner to attend a certain course and that Officer Stevens was to be assigned to attend the course. Moreover, by means of a written directive dated July 16, 1982, plaintiff was advised by Maurer that "[a]s of this date, notices pertaining to schools, seminars, or any type of schools of instructions; they are to be discussed with me before any assignments are made."
Maurer explained that he wanted to be informed of potential school assignments before they were actually made because of budgetary considerations and also to ensure that all officers on the force were given an equal opportunity to attend these courses. He further testified that he advised plaintiff to allow Officer Stevens to attend a breathalyzer course rather than Detective Turner because Turner was an Internal Affairs Officer and his duties did not involve the use of breathalyzers.
In addition, plaintiff alleged that Maurer had by-passed the chain of command by giving orders to subordinates without consulting the chief of police. Thus, plaintiff pointed to a *477 memorandum dated November 30, 1981 which Maurer sent to a police department secretary, stating the following:
Have list posted in locker room for volunteer sign up to work 11-7 shift on the corner of Laurel & Commerce, to begin Tue Dec 1st upto [sic] Thurs Dec. 24TH. List to be posted Monday AM and removed Tue 3 PM and so noted on list. Desk officer is to call the platoon that is off during that notification period and also to call all walking patrolmen and notify them of the list and the deadline for sign-up.
Maurer explained that extra police coverage was needed in the downtown shopping district during the Christmas season and that he had discussed the situation with plaintiff.
Plaintiff also complained of an incident which occurred on December 28, 1981, when Maurer appointed Lieutenant Andrew Erianne to be acting chief of police for a period of four days while plaintiff was on vacation. Plaintiff was of the opinion that he has sole authority to appoint an acting chief of police.
In addition, plaintiff referred to a letter dated July 22, 1980, which was prior to the effective date of the amendment to N.J.S.A. 40A:14-118, wherein Maurer advised him of the following:
As per the investigation of Officer Kane's campaigning while on duty and in uniform, it appears Officer Kane has violated certain rules and regulations of the Duty Manual and possibly even Civil Service Regulations.
Please review the Duty Manual and file the appropriate charges....
Plaintiff was of the opinion that it was improper for Maurer to have ordered him to file charges against a police officer since that is a function which the chief of police should perform.
According to Maurer, this was the only occasion on which he ordered plaintiff to file charges against an officer. Maurer explained that his review of the investigatory report issued by the internal affairs officer made it quite obvious that charges should be filed. Since plaintiff refused to file charges, Maurer found it necessary to order plaintiff to do so.
Maurer explained that whenever he received a complaint regarding a police disciplinary matter, he assigned the case to Detective Turner, the Internal Affairs Officer, to investigate the matter. If plaintiff happened to receive the complaint *478 rather than Maurer, plaintiff had the authority to assign the investigation to the internal affairs officer. This officer was directly responsible to Maurer. Although there were times when investigations were begun without plaintiff's knowledge, Maurer eventually discussed all internal investigations with plaintiff. Once the investigation was completed, the internal affairs officer issued a report to plaintiff and Maurer. Plaintiff thereafter prepared the appropriate charges and Maurer normally acted as hearing officer.
Plaintiff also testified that he prepared an organizational chart setting forth the internal structure of the police department on July 16, 1979, which was prior to the effective date of the amendment to N.J.S.A. 40A:14-118. Plaintiff submitted the chart to Maurer and was thereafter directed by Maurer to make three changes on the chart. One of these changes involved the removal of the Internal Affairs Officer from the Criminal Investigation Division and the insertion of the requirement that he report directly to Maurer. Plaintiff was of the opinion that the chief of police had authority to determine the internal structure of the police department.
By letter dated September 22, 1981, which was approximately one month following the effective date of the amendment to N.J.S.A. 40A:14-118, Mayor Rainear informed plaintiff of the following:
... in an effort to clarify the line of authority and responsibilities I am herein advising you of the established policies which your responsibilities are subject to and conditioned upon:
1. No interdivisional assignments or transfers shall be made without prior approval of the Director of Police and Fire.
2. Any one of the following persons shall be responsible to act as Hearing Officers for disciplinary hearings involving members of the Division of Police:
a. Director Police and Fire
b. Business Administrator
c. City Council
d. Mayor
e. Where appropriate an Administrative Law Judge
... the aforesaid policy directives are to be considered as an Amendment to the Rules and Regulations presently in effect governing the Division of Police.
*479 Plaintiff contends that he should be the hearing officer for police disciplinary matters. However, he acknowledged that nothing contained in the ordinances of the City of Bridgeton or the rules and regulations governing the police department give him such authority.
Approximately one year prior to the hearing, Maurer decided to allow plaintiff to assign acting sergeants as long as plaintiff discussed it with him first. Plaintiff testified that although Maurer informed him at the time that he would also allow plaintiff to transfer personnel between platoons, this was never put into effect. Mayor Rainear disagreed with this assertion and stated that plaintiff had the authority to transfer officers between platoons.
Mayor Rainear, who testified at Senate Committee hearings on the amendment to N.J.S.A. 40A:14-118, testified here that the amendment was primarily structured to "correct some wrongs that were occurring in municipalities where they primarily have the commission form of government ... where the various township members were taking upon themselves to individually instruct police officers.... Township committeemen ... were running around ordering police officers to go here and there without any total committee approval ..." Rainear was also of the opinion that the amendment gave plaintiff the authority to appoint acting sergeants, transfer officers between platoons and assign personnel within the organizational structure decided upon by the mayor and director.
Based on the foregoing evidence, the trial judge issued a letter opinion wherein he found that the acts of Director Maurer, of which plaintiff complained, "were entirely proper and within the framework of his proper sphere." Judge Miller's review of the legislative history of the amendment to N.J.S.A. 40A:14-118 led him to conclude that:
... Policy is to be determined by the governing body; administration thereof is to be the function of the executive arm of the government and both are to be performed by elected (and civilian) officials and the administration of subordinates *480 duly controlled by them. The police are subordinate to such administration and are not apart from them.
The judge referred to the examples of what plaintiff deemed to be impermissible interference with his sphere of activity as "trivial." He further stated:
... Without emburdening the record, suffice it to say the Court has analyzed all of the acts complained of and finds them to be within the proper sphere of a supervisor's activities. Further, it is significant that in the ongoing day-to-day administration of a busy police department of the size of Bridgeton over a period of years, plaintiff has been unable to come up with scarcely a mere baker's dozen of relatively minor incidents.
This climaxed with an order in March, 1982, wherein the director ordered a specific lieutenant assigned in charge of the detective division to which plaintiff wrote a letter stating that it was in violation of his rights and beliefs. This boiled the case down to the plain question of who was running the department; plaintiff or the director. The answer, of course, is that plaintiff was not and the director was.
Supervision without the power to direct becomes emasculated into a mere advisory function. This debilitates the power of the people to control the police and is neither permitted by the constitution or by the statute relied upon.
An order was entered dismissing the complaint with prejudice and this appeal followed.
Plaintiff contends that the trial judge erred in finding that the actions of defendant Maurer did not infringe upon the duties and responsibilities granted to plaintiff by the amendment to N.J.S.A. 40A:14-118, in his capacity as chief of police.
Prior to August 24, 1981, N.J.S.A. 40A:14-118 gave the governing body of a municipality authority to establish a police department by ordinance and provide for its maintenance, regulation and control; appoint such officers as it deemed necessary; establish their powers, functions and duties and adopt and promulgate regulations for the government of the department and for the discipline of its members. Since the office of chief of police was not mentioned in this statute, it was held that the chief derived no power or authority directly from the statute but rather, his powers were derivative in the sense that they were to be found in the ordinances, resolutions, rules and regulations adopted and promulgated by the governing body in *481 the exercise of its broad statutory responsibility. Smith v. Tp. of Hazlet, 63 N.J. 523, 526-527 (1973).
Effective August 24, 1981, N.J.S.A. 40A:14-118 was amended by L. 1981, c. 266, § 1 to provide as follows:
The governing body of any municipality, by ordinance, may create and establish ... a police force, ... and provide for the maintenance, regulation and control thereof. Any such ordinance shall, in a manner consistent with the form of government adopted by the municipality and with general law, provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members. The ordinance may provide for the appointment of a chief of police and such members, officers and personnel as shall be deemed necessary, the determination of their terms of office, the fixing of their compensation and the prescription of their powers, functions and duties, all as the governing body shall deem necessary for the effective government of the force. Any such ordinance, or rules and regulations, shall provide that the chief of police, if such position is established, shall be the head of the police force and that he shall be directly responsible to the appropriate authority for the efficiency and routine day to day operations thereof, and that he shall, pursuant to policies established by the appropriate authority:

a. Administer and enforce rules and regulations . .. for the disposition and discipline of the force and its officers and personnel;
b. Have, exercise, and discharge the functions, powers and duties of the force;
c. Prescribe the duties and assignments of all subordinates and other personnel;

d. Delegate such of his authority as he may deem necessary for the efficient operation of the force to be exercised under his direction and supervision . ..
....
As used in this section, "appropriate authority" means the mayor, manager, or such other appropriate executive or administrative officer, such as a full time director of public safety, ... as shall be provided by ordinance in a manner consistent with the degree of separation of executive and administrative powers from the legislative powers provided for in the charter or form of government either adopted by the municipality or under which the governing body operates.
....
Nothing herein contained shall prevent the appointment by the governing body of committees or commissions to conduct investigations of the operation of the police force, and the delegation to such committees or commissions of such powers of inquiry as the governing body deems necessary or to conduct such *482 hearing or investigation authorized by law. Nothing herein contained shall prevent the appropriate authority ... from examining at any time the operations of the police force or the performance of any officers or member thereof.... [Emphasis added]
In Quaglietta v. Haledon, 182 N.J. Super. 136 (Law Div. 1981), it was held that the foregoing legislation was enacted for the following purposes:
... (1) to provide for a line of authority with respect to the exercise of the police function in municipalities; (2) to establish the police force as an executive and enforcement function of municipal government; (3) to grant municipalities the sole option of determining whether to establish the position of police chief; (4) to grant statutory powers to police chiefs by mandating that they shall be in charge of their departments and providing for their specific duties and responsibilities, but only in those instances where the position of police chief is established by the municipal governing body; (5) to prevent interference by elected officials individually in the operation of the police force and (6) to designate the "appropriate authority" to exercise regulatory power over the police function in each form of government. [Id. at 145]
Thus, the Legislature has withdrawn from municipalities the authority and power to prescribe the duties of police chiefs if such a position is established. Ibid.
In finding that the actions of Director Maurer "were entirely proper and within the framework of his proper sphere", the trial judge relied to a great extent on the legislative history of the amendment to N.J.S.A. 40A:14-118. Plaintiff argues that since the words of the statute are clear and unambiguous, the trial judge should not have resorted to extrinsic materials to determine the Legislature's intent.
It is well-recognized that courts must enforce the legislative will as written in the enactment and not according to some unexpressed intention. Dacunzo v. Edgye, 19 N.J. 443, 451 (1955); Salb v. Lemoine Ave. Associates, 178 N.J. Super. 36, 40 (App.Div. 1981). "We are not at liberty through surmise or external considerations to ignore, alter or depart from the clear meaning of the unambiguous statutory language." Bravand v. Neeld, 35 N.J. Super. 42, 52 (App.Div. 1955).
Legislative intent must first be ascertained by looking to the words of the statute itself. Lumbermens Mutual Casualty *483 Co. v. Carriere, 170 N.J. Super. 437, 443 (Law Div. 1979); Richman v. Blank, 45 N.J. Super. 272, 278 (Law Div. 1957). Where the words of the statute are clear and explicit, courts should not resort to extrinsic material to determine that the Legislature intended something other than what it actually expressed. "Extrinsic aids are never used to create an ambiguity, only to resolve one." Myers v. Cedar Grove Tp., 36 N.J. 51, 61 (1961).
While we conclude it was appropriate for the trial judge to consider the amendment's legislative history in order to ascertain the sense and meaning of the language used, we disagree, however, with his analysis and his ultimate conclusion with respect thereto.[1] The duties and responsibilities granted to a chief of police by the amendment to N.J.S.A. 40A:14-118 are to be exercised "pursuant to policies" established by the appropriate authority. We view this term as ambiguous and thus resort to extrinsic materials may properly be made in order to determine the meaning and true intent of the statute. In any event, the legislative history of an enactment may be resorted to not only in resolving ambiguities but also in supplying "reassuring confirmation of literally apparent meaning." Service Armament Co. v. Hyland, 70 N.J. 550, 560 (1976); Data Access Systems, Inc. v. State, 63 N.J. 158, 166 (1973).
The amendment to N.J.S.A. 40A:14-118 had its original beginnings on April 5, 1976, when Senate Bill No. 1317 was introduced by Senator McGahn. This bill would have amended *484 N.J.S.A. 40A:14-118 by merely adding a paragraph to provide that a municipal ordinance establishing a police department
... shall, except where specifically provided to the contrary by law provide that the chief of police shall be the chief executive head of the police department and be responsible to the governing body for the efficiency thereof, and that he shall
(1) Administer and enforce rules and regulations for the disposition and discipline of the department and its officers and employees;
(2) Have, exercise and discharge the functions, powers and duties of the department;
(3) Prescribe the duties of all subordinates and assistants;
(4) Delegate such of his authority as he may deem necessary for the efficient administration of the department to be exercised under his direction and supervision by division heads....
This bill was not passed by the Legislature but was reintroduced by Senator Feldman on September 18, 1978 in virtually the same form. The bill was thereafter referred to the Senate County and Municipal Government Committee. In dismissing the complaint, Judge Miller noted in his opinion that "the language sought to be incorporated in the statute by the Police Chiefs' Association and which would substantially justify the conclusions of plaintiff in the present case was specifically presented and rejected." We disagree since the Senate County and Municipal Government Committee's statement to Senate Bill No. 1317 dated April 23, 1979 indicates that the committee amended the bill to reconcile the concerns of the New Jersey Association of Chiefs of Police that:
a. Municipal officials not be permitted to bypass the police chief by assigning duties directly to his subordinates;
b. The nature of a chief's duties and responsibilities be clarified to provide a uniform concept of the position, rather than having the nature of the position dependent upon the provisions of each local ordinance; and
c. Municipal elected officials not be permitted to interfere in the day to day operations of the force,...
The statement further indicates that the committee amended the bill to reconcile the concerns of local officials that:
1. The legislation not attempt to uniformily [sic] impose a line of authority on all municipalities which may not be compatible with all forms of municipal government;

*485 2. The authority to set policy for the police function be vested in the appropriate authority for each form of municipal government, and that the police chief be answerable to that authority for the implementation of those policies; and,
3. The legislation not mandate the creation of the position of chief of police....
Finally, the statement indicates that the committee was of the opinion that the mayor and any department head designated by ordinance is the "appropriate authority" for Faulkner Act communities having a mayor-council form of government.
The Committee on County and Municipal Government amended the bill to contain most of the provisions which were eventually enacted into law.
The Senate County and Municipal Government Committee reported Senate Bill No. 1317 without recommendation for the Senate's consideration. However, the bill was not passed by the Legislature.
On April 28, 1980, Senators Feldman, Graves, Gregorio, Gagliano and Parker introduced Senate Bill No. 1243. This bill, as originally introduced, contained many of the provisions which were eventually enacted into law. However, the bill contained a requirement that each municipality appoint a chief of police. The bill also provided that the chief's responsibilities included ".... [p]rescrib[ing] the internal organization of the force...." and "[a]dminister[ing] the work of the force through the divisions and such other units of administration as he may find necessary or desirable; ...."
Following its referral to the Senate County and Municipal Government Committee and the Assembly Judiciary, Law, Public Safety and Defense Committee, the bill was amended to remove the requirement that each municipality appoint a chief of police and to remove from the chief's responsibilities the power to prescribe the internal organization of the force. As amended, Senate Bill No. 1243 was adopted on June 22, 1981 and went into effect on August 24, 1981.
*486 Plaintiff argues that the trial judge erred in failing to find that Director Maurer's actions violated N.J.S.A. 40A:14-118c which grants a police chief the authority to prescribe the duties and assignments of all subordinates and other personnel, as long as this authority is exercised pursuant to policies established by the "appropriate authority." It appears clear that Director Maurer constitutes the "appropriate authority" to exercise regulatory power over the police function in the City of Bridgeton. Thus, N.J.S.A. 40:69A-43 provides that Faulkner Act communities having the mayor-council form of government shall have departments which are established by ordinance and that each department shall be headed by a director. The Senate County and Municipal Government Committee Statement to Senate Bill No. 1243 indicates that the mayor and any department head designated by ordinance constitute the "appropriate authority" to exercise regulatory power over the police function in those municipalities having the mayor-council form of government. Bridgeton City Ordinance No. 2-10.1 provides for a Department of Police and Fire, the head of which shall be the director.
In the context of N.J.S.A. 40A:14-118 which in part spells out the relationship of the municipal governing body, including its appropriate executives, and the chief of police, we deem the authority to fix policy as one comprehending the formulation of fundamental principles to serve as broad guides to the chief of police in making his decisions with respect to discharging his responsibility for the efficiency and routine day to day operation of the police department.
In this connection we recognize there will be instances where that which one believes is the fixing of "policy" or that which another believes is a proper exercise of one's authority to run the day to day operations of a police department will shade off into "grey" areas. Thus substantial difficulty is encountered in analyzing such acts and accurately characterizing them within the meaning of the statute.
*487 It appears clear from the examples given by plaintiff during his testimony, which were supported by documentary evidence, that Director Maurer has interfered with the routine day to day operations of the police force and with plaintiff's authority to prescribe the duties and assignments of police personnel in violation of N.J.S.A. 40A:14-118. In one of the instances complained of by plaintiff we note that the event occurred prior to the passage of N.J.S.A. 40A:14-118. It concerned Maurer's directing plaintiff to change the organizational chart of the police department, prepared theretofore by plaintiff, so as to remove the Internal Affairs Officer from the Criminal Investigation Division and the insertion of a requirement that such officer report directly to Maurer. This directive was made on or about July 16, 1979. It appears that plaintiff had only a qualified authority to determine the internal organization of the department at that time in that Ordinance No. 71-10, then controlling, provided that such authority was "under direction." Hence, the act of Maurer in this regard may not have constituted interference with plaintiff's duties and responsibilities. We conclude, however, that after August 24, 1981 (the date of passage of N.J.S.A. 40A:14-118) Maurer's continuing to order the Internal Affairs Officer to report directly to him rather than to the chief was improper. Maurer acknowledged that he assigns complaints involving police disciplinary matters directly to Detective Turner and that there are times when investigations are begun without plaintiff's knowledge. Indeed, by letter dated November 10, 1981, Maurer informed plaintiff that he had assigned Turner to complete an investigation regarding money which was missing from a safe located in the violations clerk's office. Plaintiff had no prior knowledge of the investigation or assignment. Since Detective Turner is a member of the police force, N.J.S.A. 40A:14-118c mandates that his duties and assignments be prescribed by plaintiff rather than by Director Maurer.
It was also improper for Director Maurer to have assigned Lieutenant Erianne and Detective Turner to address the City of *488 Salem's Neighborhood Crime Watch group on a specific date. Although it may have been proper for Maurer to have formulated a "policy" of having officers address neighborhood crime watch groups in various communities, he clearly interfered with plaintiff's duties as chief of police by assigning the specific officers and establishing the date of which the group was to be addressed.
Similarly, it was improper for Director Maurer to have overruled plaintiff's decision to appoint Lieutenant Bondi as head of the detective division and instead, place Lieutenant Erianne in that position. This constituted an infringement of plaintiff's authority to prescribe the assignments of all subordinates with in his department.
With regard to the written directive which plaintiff received regarding the stationing of an officer at the V.D. Clinic, we do not find that this constituted an improper attempt to interfere with plaintiff's responsibilities since the letter merely stated that an officer "should" be assigned to the clinic. We conclude this directive constituted nothing more than a policy decision.
Director Maurer also interfered with plaintiff's assignments of personnel to various police training schools. It was clearly improper for Maurer to have removed Detective Turner from homicide school without plaintiff's knowledge and to have ordered plaintiff to assign Officer Stevens to attend a breathalyzer course rather than Detective Turner. Similarly, plaintiff should not have been directed to discuss all school assignments with Maurer before they were made. If Maurer's actions were prompted by budgetary considerations as he maintained, he could have simply ordered plaintiff to stay within a specific yearly budget allocated for police training course. Similarly, Maurer's concern that all officers on the force be given an equal opportunity to attend school could have been implemented by the promulgation of a policy directive to this effect, rather than by interfering with plaintiff's authority to prescribe *489 the assignments of individual police officers in violation of N.J.S.A. 40A:14-118c.
Director Maurer also interfered with plaintiff's responsibilities in the day to day operation of the police department when he ordered a police department secretary to post a list in the locker room for volunteer sign-up to work the 11-7 shift on the corner of Laurel and Commerce Streets. Plaintiff had sole responsibility to assign such a task to the police department secretary pursuant to N.J.S.A. 40A:114-118c. Thus, Maurer's actions cannot be characterized as the fixing of policy but, rather, as a clear attempt to interfere with the routine day to day operations of the force which are the responsibility of the chief of police.
Plaintiff also contends, correctly, that the trial judge erred by failing to declare null and void the amendment to the rules and regulations of the City of Bridgeton's Police Division which was allegedly created by Mayor Rainear's letter of September 22, 1981. This letter advised plaintiff that "[n]o interdivisional assignments or transfers shall be made without prior approval of the Director of Police and Fire." The organizational chart of the City of Bridgeton's Division of Police violates N.J.S.A. 40A:14-118c which gives the chief of police authority to prescribe the assignments of all subordinates and other personnel. Where there is a conflict between a statute and a municipal ordinance or regulation, the latter must give way. Quaglietta, 182 N.J. Super. at 146; 6 McQuillin, Municipal Corporations, (3 ed), § 21, 32 at 240.
Mayor Rainear's letter of September 22, 1981 also amended the rules and regulations of the City of Bridgeton's Division of Police to provide that the director of police and fire, the business administrator, the members of the city council, the mayor or an administrative law judge are authorized to act as hearing officers with regard to police disciplinary matters. Plaintiff contends that this amendment to the rules and regulations of the Division of Police is null and void because the *490 amendment to N.J.S.A. 40A:14-118 authorizes the chief of police to act as hearing officer. We disagree since N.J.S.A. 40A:14-118a merely authorizes the chief of police to "[a]dminister and enforce rules and regulations ... for the disposition and discipline of the force and its officers and personnel...." Nothing contained within this statute or the ordinance and regulations governing the City of Bridgeton's Police Division gives plaintiff the authority to act as hearing officer in police disciplinary matters. It should be noted that N.J.S.A. 40:69A-43(d) gives department heads the authority to remove subordinate officers and employees within their respective departments.
Plaintiff also contends that the trial court erred by failing to find that he has authority to determine the internal structure of the police department. We do not agree with this argument since there is nothing contained within the amendment to N.J.S.A. 40A:14-118 which gives a chief of police such authority. Indeed, the legislative history of Senate Bill No. 1243 indicates that the Legislature decided against giving chiefs of police this authority. Thus, as originally introduced, Senate Bill No. 1243 granted chiefs of police the authority to "[p]rescribe the internal organization of the force." However, this provision was deleted prior to the bill's passage. Moreover, although Ordinance No. 71-10 of the City of Bridgeton gave the chief of police authority to determine the internal organization of the police department, a subsequent set of rules and regulations governing the Division of Police made this authority subject to the "consent and knowledge of the Director of Police & Fire."
Plaintiff also maintains that Director Maurer infringed upon the chief of police's responsibilities when he appointed Lieutenant Erianne to be acting chief of police for a period of four days while plaintiff was on vacation. We agree since N.J.S.A. 40A:14-118d gives a chief of police the power to *491 "[d]elegate such authority as he may deem necessary for the efficient operation of the force...."
Plaintiff also argues that it was improper for Director Maurer to have ordered him to file disciplinary charges against Officer Kane. This incident occurred prior to the effective date of the amendment to N.J.S.A. 40A:14-118. Plaintiff is correct in this regard since the rules and regulations governing the City of Bridgeton's Police Department give the chief of police authority to file police disciplinary charges. If Maurer was of the opinion that plaintiff had ignored his duties by refusing to file a disciplinary charge against a subordinate, Maurer could have instituted disciplinary proceedings against the chief of police. Under present law, the chief of police has the responsibility to file police disciplinary charges since N.J.S.A. 40A:118a gives the chief authority to "[a]dminister and enforce rules and regulations ... for the disposition and discipline of the force and its officers and personnel."
Finally, plaintiff argues that Director Maurer interfered with the police chief's responsibilities by assigning Lieutenant Erianne to formulate a neighborhood watch program in the 4th ward area, and by ordering plaintiff to assign Officers Denby and Everingham to the second ward area. Both of these incidents occurred prior to the effective date of the amendment to N.J.S.A. 40A:14-118. Nevertheless we agree with plaintiff's argument since Ordinance No. 71-10 of the City of Bridgeton gives the chief of police the responsibility to make "suitable assignments" of police personnel.
Plaintiff also contends that Maurer's action in interfering with his duties and responsibilities as police chief constituted a demotion in rank in violation of N.J.S.A. 40A:14-147. The trial judge failed to address this argument in his opinion even though it was raised by plaintiff in Count I of his complaint. In light of the result we reach, we dismiss this aspect of plaintiff's complaint. In our view, implementation of the terms of this *492 decision will give plaintiff complete relief inasmuch as he was never formally demoted.
Since it is clear from the foregoing discussion that Director Maurer is improperly interfering with plaintiff's responsibilities and duties as chief of police in violation of N.J.S.A. 40A:14-118, we reverse the trial judge's dismissal of the complaint and remand the matter to him for the issuance of an injunction against such further interference. We further conclude that the portion of the amendment to the rules and regulations of the Division of Police created by Mayor Rainear's letter of September 22, 1981, which prevents plaintiff from making interdivisional assignments and transfers without Maurer's approval, constitutes interference with plaintiff's responsibilities contrary to N.J.S.A. 40A:14-118 and, hence, is a nullity in this regard.
Accordingly, we reverse the order of July 5, 1983 dismissing the complaint with prejudice and remand to the trial court for the issuance of an injunction against Maurer and Rainear interfering with plaintiff's duties and responsibilities under N.J.S.A. 40A:14-118 and Bridgeton's Ordinance No. 71-10 in terms conforming with this opinion.
Reversed and remanded.
NOTES
[1] Plaintiff correctly notes in his brief that the trial judge erroneously found as controlling Mayor Rainear's testimony regarding the Legislature's intent as to the meaning of the amendment to N.J.S.A. 40A:14-107. Although Rainear testified at Senate Committee hearings on the amendment, he was certainly not competent to express what was on the Legislature's collective mind when it passed the enactment. International U. of Elec. v. Westinghouse Elec., 631 F.2d 1094, 1104 (3 Cir.1980), cert. den. 452 U.S. 967, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981).