JUSTICE ALBIN, dissenting.
"An informed citizenry is essential to a well-functioning democracy." Paff v. Galloway Township, 229 N.J. 340, 357, 162 A.3d 1046 (2017). To that end, the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, "is designed to promote transparency in the operation of government," Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541, 46 A.3d 536 (2012), because "our government works best when its activities are well-known to the public it serves," Burnett v. County of Bergen, 198 N.J. 408, 414, 968 A.2d 1151 (2009). Although today's majority opinion gives a nod to those general principles, it does not follow them.
In the wake of today's majority opinion, the operations of our government will be less transparent and our citizenry less informed, which may lead to greater misunderstanding and more distrust between the public and the police. The majority drastically limits the public's right to access video recordings made by police officers when they interact or have confrontations with **31 members of the public. This closing of what ordinarily should be an open door of access to records violates both specific statutory provisions and the broad principles of OPRA, and is inconsistent with our own jurisprudence. For those reasons, I respectfully dissent.
I.
A.
In this case, a Barnegat Township police vehicle's mobile video recorder (MVR) filmed an officer setting a police dog on a woman pulled from her car after she committed several motor vehicle infractions and eluded the police. No public safety justification warranted the officer allowing the dog to attack and injure the driver. The video recording clearly established what occurred, and its release might have quelled rumors or false reports. Importantly, at this point, the release of the video would not undermine any ongoing police investigation.
Plaintiff John Paff sought access to the video recording by filing an OPRA request with the Ocean County Prosecutor's Office. The Prosecutor's Office denied Paff access, citing as one of its reasons for nondisclosure *993 the criminal investigatory records exception to OPRA.
Under OPRA, government records, which include video recordings, must generally be made available for examination by our citizens, and any limitation on the right to disclosure must "be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. There are exceptions, however, to the rule of general disclosure. The one at issue here is the criminal investigatory records exception. A law enforcement agency does not have to disclose "a record which is not required by law to be made, maintained or kept on file that is held by a law enforcement agency which pertains to any criminal investigation or related civil enforcement proceeding." N.J.S.A. 47:1A-1.1 (emphasis added).
**32 Here, the Barnegat Township Chief of Police issued a General Order to members of the police department to video-record certain interactions with the public. The General Order states that "[i]t is the policy of [the Barnegat Township Police Department] to use mobile video recorders in order to protect the members of this agency and to record information related to motorist contacts and other patrol related activities." The Chief's General Order is a command to all officers in the police department explicitly directing when and how to video-record encounters with the public. No police officer under the Chief's command has the discretion to disobey that Order. In other words, that Order has the force of law. Because the video recording was "required by law to be made," it therefore does not constitute an exempt record under OPRA's criminal investigatory records exception.
That the Chief's command has the force of law is clear from the powers delegated to him by the Legislature. N.J.S.A. 40A:14-118 provides that the chief of police "shall be the head of the police force and that he shall be directly responsible to the appropriate authority for the efficiency and routine day to day operations thereof." The chief of police has the duty to "[a]dminister and enforce rules and regulations and special emergency directives for the disposition and discipline of the force and its officers"; "exercise, and discharge the functions, powers and duties of the force"; and "[p]rescribe the duties and assignments of all subordinates." N.J.S.A. 40A:14-118(a) to (c) (emphasis added). The current version of N.J.S.A. 40A:14-118 is the product of a 1981 legislative amendment, L. 1981, c. 266, § 1, which gave chiefs of police "express statutory authority ... to avoid undue interference by a governing body into the operation of the police force." Falcone v. De Furia, 103 N.J. 219, 221-22, 510 A.2d 1174 (1986). Before the amendment, a chief of police derived his power from "ordinances, resolutions, rules and regulations adopted and promulgated by the governing body in the exercise of its broad statutory responsibility." Grasso v. Borough Council of Glassboro, 205 N.J. Super. 18, 29, 500 A.2d 10 (App. Div. 1985) (quoting **33 Gauntt v. City of Bridgeton, 194 N.J. Super. 468, 480-81, 477 A.2d 381 (App. Div. 1984) ); cf. Sponsor's Statement to S. 1243 (L. 1981, c. 266, § 1) ("This bill clarifies responsibility for the conduct of municipal police activities by providing for the duties and responsibilities of chiefs of police.").
The Legislature delegated to the Chief of Police the power to issue the General Order to his officers. The failure to abide by that direct order presumably would subject an officer to discipline, perhaps even removal. See N.J.S.A. 40A:14-181 (referencing Police Bureau of the Div. of Criminal Justice, Internal Affairs Policy & Procedures (Nov. 2017) ). Under OPRA's broad right of disclosure, a chief of police's direct order has the force of law, and therefore the video recordings were "required by law" in this case, meaning that *994 the criminal investigatory records exception does not apply.
B.
The majority, however, concludes that because the Chief of Police's General Order is not an ordinance or statute, or even an Attorney General directive, the video recording is not a record "required by law" to be maintained and therefore not subject to OPRA's disclosure requirement. Ante at 20-21, 192 A.3d at 986. To reach that conclusion, however, the majority abandons OPRA's declaration that any limitation on the right to disclosure must "be construed in favor of the public's right of access," N.J.S.A. 47:1A-1, and eviscerates our holding in North Jersey Media Group, Inc. v. Township of Lyndhurst, 229 N.J. 541, 163 A.3d 887 (2017).
In Lyndhurst, this Court recognized that the Attorney General, as the State's chief law enforcement officer, "has the authority to adopt guidelines, directives, and policies that bind police departments throughout the State." Id. at 565, 163 A.3d 887. With that in mind, we held that the Attorney General's policy requiring officers to complete a Use of Force Report had "the force of law for police entities." Ibid. (quoting O'Shea v. Township of West Milford, 410 N.J. Super. 371, 382, 982 A.2d 459 (App. Div. 2009) ). Because the Attorney General's policy had "the force of law," we determined that the "Use of Force Reports are 'required by law to be made' "
**34 and therefore "cannot be exempt from disclosure under OPRA's criminal investigatory records exemption." Ibid. (quoting N.J.S.A. 47:1A-1.1 ).
Lyndhurst supports the disclosure of the video recording in this case because the chief of police's power to bind police officers to follow a general order is in no meaningful way distinguishable from the Attorney General's power to bind police forces to follow his directives. Both a chief of police and the Attorney General act under authority delegated by the Legislature.
The majority's claim that there are "significant distinctions between the Attorney General's Use of Force Policy ... and the Barnegat Township Police Chief's General Order" does not hold water. See ante at 20, 192 A.3d at 986. The majority states that "no statute gives a General Order promulgated by the Barnegat Township Police Chief the force of law," citing N.J.S.A. 40A:14-118. Ante at 20, 192 A.3d at 986. Although I do not dispute that the Legislature has given the Attorney General the power to "bind police departments throughout the State" to follow statewide directives, Lyndhurst, 229 N.J. at 565, 163 A.3d 887, it is also true that the Legislature has delegated to chiefs of police the power to issue general directives that are binding on police officers under N.J.S.A. 40A:14-118.
The arbitrary distinction created by the majority undermines the effectiveness of OPRA in an area where the transparency of the government's conduct in its affairs with the public is of critical importance to an informed citizenry. Sunlight is the greatest disinfectant when the government acts in dark corners. See Buckley v. Valeo, 424 U.S. 1, 67, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (quoting Louis Brandeis, What Publicity Can Do, in Other People's Money and How the Bankers Use It 62 (National Home Library Foundation ed. 1933) ).
In Lyndhurst, this Court generally observed:
Ready access to government records lies at the heart of OPRA. And in the case of a police shooting, non-disclosure of dash-cam videos can undermine confidence in law enforcement and the work that officers routinely perform. It can also fuel the **35 perception that information is being concealed -- a concern that is enhanced *995 when law enforcement officials occasionally reveal footage that exculpates officers.
[ 229 N.J. at 576-77, 163 A.3d 887.]
The concerns expressed by the Court in favor of disclosure of a dash-cam video in a police shooting case apply with equal force here where a police dog was allowed to attack a driver stopped for motor vehicle infractions and eluding. The majority's decision will make exceedingly more difficult the ability of citizens to gain access to police video recordings and reports. That is not in keeping with a statute that calls itself the Open Public Records Act.
C.
The majority's decision will have far-ranging consequences. For the most part, this decision will render superfluous the ongoing investigation exception under OPRA. See N.J.S.A. 47:1A-3. When records, such as the video recording in this case, are exempt under the criminal investigatory records exception, the analysis ends. The Legislature evidently intended that the ongoing investigation exception and other exceptions would narrow the scope of criminal records subject to disclosure. Thus, if the video recording in this case -- and other records -- were not subject to the criminal investigatory records exception, its disclosure would still be contingent on the analyses under a number of other potential OPRA exceptions, such as the ongoing investigation exception, N.J.S.A. 47:1A-3 ; the victim's personal identifying information exception, N.J.S.A. 47:1A-2.2 ; the citizen's reasonable expectation of privacy exception, N.J.S.A. 47:1A-1 ; the emergency or security information exception, N.J.S.A. 47:1A-1.1 ; the security measures and surveillance techniques exception, ibid.; and executive orders of the Governor, N.J.S.A. 47:1A-1. Those additional safeguards refute the majority's suggestion that the sky would fall if a chief of police's direct order were to have the force of law.
With the majority's expansive reading of the criminal investigatory records exception, the general rule effectively will be nondisclosure. In that way, the majority has turned OPRA on its head.
**36 Contrary to the majority's approach, exceptions to OPRA should be construed narrowly in light of OPRA's declaration that "any limitations on the right of access ... shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1.
The majority still gives Paff and the public a pathway to disclosure under the common law. But that will be a difficult and burdensome path fraught with litigation and increased costs. Because of the complicated formula under the common law right to access, which requires the weighing of a number of competing factors, custodians will be loath to disclose records voluntarily. The responsibility will fall to judges to engage in factfinding and balance the factors for and against release. The common law is not an adequate substitute for OPRA because the Legislature intended a streamlined and simplified methodology for records custodians to make decisions. See Pub. Hearing Before S. Judiciary Comm., S. 161, 351, 573, 866 80 (Mar. 9, 2000) ("[I]f [OPRA] is passed, [requestors are] going to get the records a lot more quickly ... and a lot less expensively, than having to litigate under the common law.").
II.
In accordance with Lyndhurst, the Attorney General or the Legislature can undo the damage caused by today's decision. The Attorney General can adopt a statewide policy that addresses whether and how police video recordings are made and maintained, as he did with Use of Force Reports.
*996 The public -- particularly marginalized communities -- will have greater trust in the police when law enforcement activities are transparent. Because the majority's decision does not advance that purpose, I respectfully dissent.