63 N.J. Super. 136 (1960)
164 A.2d 184
IN THE MATTER OF THE APPEAL OF MAURICE R. EMMONS.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1960.
Decided September 30, 1960.
*137 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. Clarkson S. Fisher argued the cause for appellant.
Mr. John A. Golden argued the cause for respondent City of Long Branch (Mr. Julius J. Golden, attorney; Mr. John A. Golden, on the brief).
Mr. William L. Boyan, Deputy Attorney General, argued the cause for respondent Department of Civil Service (Mr. David D. Furman, Attorney General, attorney).
*138 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Emmons, a Long Branch police officer, brings this appeal under R.R. 4:88-8 to review the action of the Department of Civil Service which, after a hearing de novo, determined that his 90-day suspension from the police force for conduct unbecoming a police officer was proper. The suspension had been imposed after a local departmental hearing and was based on Emmons' refusal to cooperate in an examination to determine his sobriety following an off-duty automobile accident in Long Branch in which he was personally involved.
The established rule is that on a review of facts determined by an administrative agency, we confine ourselves to the question of whether its findings are supported by substantial evidence  such evidence as a reasonable mind might accept as adequate to support the conclusion or, to put it differently, whether the evidence furnished a reasonable basis for the agency's action. Zachariae v. New Jersey Real Estate Comm'n, 53 N.J. Super. 60, 62 (App. Div. 1958); In re Greenville Bus Co., 17 N.J. 131, 137-138 (1954). Our examination of the record satisfies us that the Civil Service Department determination was amply supported by the testimony and should not be disturbed.
Appellant claims that the Department determination was based on his refusal  made on the advice of counsel  to take a blood test under N.J.S.A. 39:4-50.1. The agency did mention the refusal in its findings of fact. But its conclusions clearly show that it founded its determination on Emmons' uncooperative attitude in failing to answer the simplest questions put to him by Dr. Goldberg, the city physician who attempted to examine him, and to submit to certain parts of the sobriety examination (such as the finger-to-nose test) which his injuries did not prevent him from taking.
There was sufficient evidence to sustain the suspension without considering Emmons' refusal to take a blood test. The issue was therefore a factual one, and its resolution *139 depended in large part upon credibility. The position of the Department hearer was, of course, far superior to ours in judging credibility. In re Cohen, 56 N.J. Super. 502, 505 (App. Div. 1959), certification denied 31 N.J. 297 (1960); cf. R.R. 1:5-4(b). He apparently chose to believe the city physician rather than Emmons.
Dr. Goldberg testified that he saw Emmons in the hospital emergency room at about midnight, some 45 minutes after the accident. Also present were the house physician, a nurse, Police Officer Anastasia and one Burlett, driver of the automobile with which Emmons had collided. The doctor was no stranger to Emmons; he had treated him as a boy. Dr. Goldberg saw no indications of injury; he testified that he did not believe Emmons was injured, nor was he in shock. Although the doctor questioned Emmons for some ten minutes, he received no answers. Among other things, he asked Emmons if he had been drinking, where he was going at the time of the accident, if he was injured, if he was a drinking man, would he permit the doctor to examine him, would he perform the finger-to-nose test, would he do the Romberg test? Emmons said he could remember no question that he had refused to answer. He admitted his mind was clear before the questioning began, and he could understand the city physician.
Dr. Goldberg testified that later on Emmons did give some answers: he had taken some Anacin that morning, had worked until 6 P.M., was "allergic to needles." He complained of a headache and said there had been no tail lights on the other car.
Emmons was clear-minded enough to ask Officer Anastasia to phone his lawyer to ask what he should do about taking a sobriety test. Anastasia did so and informed Emmons that the lawyer had advised that he refuse to take the test. Emmons testified he was relying on the advice of counsel in not submitting to a blood test, and had asked Anastasia to make the call because the attorney was a very close friend and he wanted "to have a friend around." He professed not *140 to have been concerned about a sobriety test; he said, "I can't say I refused it because to tell you the truth I couldn't get off the stretcher, as I stated before, to do the Romberg."
We observe that despite Emmons' testimony as to his impaired physical condition, no hospital report was submitted in evidence that would reveal the extent of his injuries, nor did any of the hospital personnel or his own physician, who later treated him, testify in his behalf.
Did Emmons' failure to cooperate and to submit to a sobriety test constitute "conduct unbecoming an officer" and so serve as a proper ground for suspension? We hold that it did. The phrase is an elastic one. It has been defined as "any conduct which adversely affects the morale or efficiency of the bureau * * * [or] which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." Zeber Appeal, 398 Pa. 35, 43, 156 A.2d 821, 825 (Sup. Ct. 1959). Our courts, too, have emphasized the idea that a police force "is built upon a plane of public efficiency, which has ordinary truth and morality as its base." Martin v. Smith, 100 N.J.L. 50, 52 (Sup. Ct. 1924).
It is settled in this State that a police officer's misconduct need not have occurred while he was on duty. Suspension or even removal may be justified where such misconduct occurred while he was off-duty, as here. In re Cohen, above, 56 N.J. Super., at page 507; Ward v. Keenan, 3 N.J. 298, 311 (1949); Herbert v. Atlantic City, 87 N.J.L. 98, 101 (Sup. Ct. 1915). Were the matter otherwise, the desired goal of upholding the morale and discipline of the force, as well as maintaining public respect for its officers, would be undermined. Nor need a finding of misconduct be predicated upon the violation of any particular rule or regulation, but may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct. Asbury Park v. Department of Civil Service, 17 N.J. 419, 429 (1955).
*141 What Chief Justice Weintraub had to say in State v. Cohen, 32 N.J. 1, 11 (1960), with respect to the non-punishability of mere "immorality" on the part of a policeman, obviously had reference to criminal proceedings. He stated that immoral conduct might well be grounds for removal from office. Ibid., at pages 12, 13. It is clear that conduct which will justify discliplinary action need not be criminal in nature.
The present case is subject to possible distinction from those which have preceded it only in the degree of relationship between the officer's conduct and his duty as defender of truth and morality. Certainly Emmons' conduct is distinguishable from that of an officer who has attempted to appropriate public parking meter funds for himself, In re Cohen, above, 56 N.J. Super. 502; or wilfully misstated the truth to his superior officer in regard to police business, Martin v. Smith, above; or refused to cooperate in the investigation of an alleged theft by fellow officers, Gaudette v. Bd. of Public Safety of Torrington, 20 Conn. Sup. 147, 127 A.2d 836 (C.P. 1956).
On the other hand, by refusing to submit to a sobriety test and cooperate in the investigation of the accident to determine whether there had been a violation of the law which he was sworn to uphold, Emmons certainly contributed to the obstruction of justice. Such conduct must be considered as tending to reflect upon and impair the morale and discipline of the police force. The mere fact that the particular investigation involved Emmons himself does not condone his recalcitrant attitude towards a discovery of the facts.
The excuse that Emmons acted upon the advice of counsel does not justify conduct unbecoming a police officer nor constitute a defense thereto.
Appellant argues that a police officer should not be held to a different standard from that of an ordinary citizen. While this may be true with respect to criminal violations, see State v. Cohen, above, 32 N.J. 1, such is assuredly not the case here. An officer cannot complain that he is being *142 held up as a model of proper conduct; it is one of the obligations he undertakes upon voluntary entry into the public service. His obligations are greater if he desires to maintain his position as police officer.
Any assertion on the part of appellant that suspension from the police force for failure to submit to a sobriety test or answer questions would violate constitutional due process as well as his statutory privilege against self-incrimination, is entirely without foundation. This was a disciplinary proceeding, not a criminal action. The issue, therefore, was not whether Emmons had a right to exercise a constitutional privilege, but whether his refusal to cooperate in the investigation of the accident was a breach of his public trust. Cf. Drury v. Hurley, 339 Ill. App. 33, 88 N.E.2d 728 (App. Ct. 1949), certiorari denied 339 U.S. 983, 94 L.Ed. 1386, 70 S.Ct. 1027 (1950), rehearing dismissed 340 U.S. 804, 95 L.Ed. 590, 71 S.Ct. 15 (1950); 44 A.L.R.2d 796 (1955); Beilan v. Board of Education, 357 U.S. 399, 2 L.Ed.2d 1414, 78 S.Ct. 1317 (1958), rehearing denied 358 U.S. 358, 3 L.Ed.2d 91, 79 S.Ct. 10 (1958); Nelson v. Los Angeles County, 362 U.S. 1, 4 L.Ed.2d 494, 80 S.Ct. 527 (1960). Also see Laba v. Newark Board of Education, 23 N.J. 364, 389-393 (1957).
We do not here pass upon whether Emmons had a right to refuse to take a blood test. We limit our affirmance of the action taken by the Department of Civil Service to Emmons' refusal to answer the questions Dr. Goldberg asked early in the examination, and to submit to the few simple tests which would have determined his sobriety.
Affirmed.