258 N.J. Super. 32 (1992)
609 A.2d 61
IN THE MATTER OF CARL HARTMANN AND STEVEN SMITH, PLAINTIFFS-RESPONDENTS,
v.
POLICE DEPARTMENT OF THE VILLAGE OF RIDGEWOOD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1992.
Decided July 1, 1992.
*33 Before Judges PRESSLER, SKILLMAN and D'ANNUNZIO.
Sydney V. Stoldt, Jr. argued the cause for appellant (Stoldt & Horan, attorneys; Cathy J. Pollak, on the brief).
Philip De Vencentes argued the cause for respondent Carl Hartmann (Galantucci & Patuto, attorneys).
William J. Berman argued the cause for respondent Steven R. Smith (Rosen and Berman, attorneys).
Michael S. Bokar, Senior Deputy Attorney General, submitted a statement in lieu of brief for the Merit System Board (Robert J. Del Tufo, Attorney General, attorney).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
*34 This appeal arises out of a disciplinary proceeding against two police officers employed by the Village of Ridgewood (Village). The Village alleged that the officers, Carl Hartmann and Steven Smith, and other Village police officers, were attending a class on January 5, 1990, that they left the class early, without permission, and that they went to a nearby restaurant-bar. The officers spent approximately two hours at the bar, during which Smith and Hartmann became involved in a heated argument. Attempts by some of the other officers to defuse the conflict were unsuccessful, and eventually Smith and Hartmann left the premises in Hartmann's vehicle "to settle the matter."
Hartmann and Smith drove to an isolated property, known as the pump house, owned either by the Village or by the Ridgewood Board of Education. At the pump house they engaged in a fistfight and wrestling match. During the fight, the officers rolled down an embankment toward a creek. Smith allegedly disengaged and climbed up the embankment. According to Smith, he then heard a shot, began running from the scene and heard two more shots.
Investigation revealed a bullet hole in a no trespassing sign at the pump house site. The police also found a spent shell casing at the site. Subsequent investigation supported an inference that the casing was ejected from Hartmann's off-duty handgun which Hartmann carried concealed in a leg holster. Apparently the handgun had the capacity to hold seven live rounds. When it was confiscated by the police, it contained only four live rounds.
Hartmann alleged that he fell into the creek as the result of his fight with Smith and that his gun became dislodged from the holster. According to Hartmann, the gun discharged accidently while it was under water as he was attempting to retrieve it from the bottom of the creek. Hartmann denied that more than one shot was fired.
*35 Disciplinary charges were brought against Hartmann and Smith and were heard by the village manager. The manager found them guilty as charged. He suspended Smith for 20 days, ordered Smith's loss of ten days vacation time, and ordered Smith to engage in a six-month program of alcohol counselling. The village manager dismissed Hartmann from the force.
Both officers appealed to the Merit System Board. Their appeal was heard by an administrative law judge who did not reach the merits. The judge determined that the Village's ordinance creating the police department, under which the department's rules and regulations were established, was ineffective because it violated N.J.S.A. 40A:14-118. He reversed the disciplinary action taken and "further ordered that these matters are remanded to respondent, Village of Ridgewood, for further appropriate action in accordance with law." The Merit System Board adopted the findings and conclusions of the administrative law judge.
The Village appeals and we now reverse and remand to the Merit System Board for further proceedings.
N.J.S.A. 40A:14-118 provides:
The governing body of any municipality, by ordinance, may create and establish, as an executive and enforcement function of municipal government, a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof. Any such ordinance shall, in a manner consistent with the form of government adopted by the municipality and with general law, provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members. The ordinance may provide for the appointment of a chief of police and such members, officers and personnel as shall be deemed necessary, the determination of their terms of office, the fixing of their compensation and the prescription of their powers, functions and duties, all as the governing body shall deem necessary for the effective government of the force. Any such ordinance, or rules and regulations, shall provide that the chief of police, if such position is established, shall be the head of the police force and that he shall be directly responsible to the appropriate authority for the efficiency and routine day to day operations thereof, and that he shall, pursuant to policies established by the appropriate authority:

*36 a. Administer and enforce rules and regulations and special emergency directives for the disposition and discipline of the force and its officers and personnel;
b. Have, exercise, and discharge the functions, powers and duties of the force;
c. Prescribe the duties and assignments of all subordinates and other personnel;
d. Delegate such of his authority as he may deem necessary for the efficient operation of the force to be exercised under his direction and supervision; and
e. Report at least monthly to the appropriate authority in such form as shall be prescribed by such authority on the operation of the force during the preceding month, and make such other reports as may be requested by such authority.
As used in this section, "appropriate authority" means the mayor, manager, or such other appropriate executive or administrative officer, such as a full-time director of public safety, or the governing body or any designated committee or member thereof, or any municipal board or commission established by ordinance for such purposes, as shall be provided by ordinance in a manner consistent with the degree of separation of executive and administrative powers from the legislative powers provided for in the charter or form of government either adopted by the municipality or under which the governing body operates.
Except as provided herein, the municipal governing body and individual members thereof shall act in all matters relating to the police function in the municipality as a body, or through the appropriate authority if other than the governing body.
Nothing herein contained shall prevent the appointment by the governing body of committees or commissions to conduct investigations of the operation of the police force, and the delegation to such committees or commissions of such powers of inquiry as the governing body deems necessary or to conduct such a hearing or investigation authorized by law. Nothing herein contained shall prevent the appropriate authority, or any executive or administrative officer charged with the general administrative responsibilities within the municipality, from examining at any time the operations of the police force or the performance of any officer or member thereof. In addition, nothing herein contained shall infringe on or limit the power or duty of the appropriate authority to act to provide for the health, safety or welfare of the municipality in an emergency situation through special emergency directives. [Emphasis added.]
Several published opinions have addressed the statute and its history. Gayder v. Spiotta, 206 N.J. Super. 556, 503 A.2d 348 (App.Div. 1985); Grasso v. Borough Council of Glassboro, 205 N.J. Super. 18, 500 A.2d 10 (App.Div. 1985), certif. denied, 103 N.J. 453, 511 A.2d 639 (1986); Gauntt v. City of Bridgeton, 194 N.J. Super. 468, 477 A.2d 381 (App.Div. 1984), certif. denied, 99 N.J. 148, 491 A.2d 664 (1984); In re Baldinger, 220 N.J. Super. *37 267, 531 A.2d 1087 (Law Div. 1987); Falcone v. DeFuria, 199 N.J. Super. 549, 489 A.2d 1260 (Law Div. 1984), aff'd. o.b., 199 N.J. Super. 554, 489 A.2d 1263 (App.Div. 1985), aff'd., 103 N.J. 219, 510 A.2d 1174 (1986); Quaglietta v. Haledon, 182 N.J. Super. 136, 440 A.2d 82 (Law Div. 1981). The administrative law judge relied on Baldinger in ruling against the Village. We conclude that he applied Baldinger too broadly.
Baldinger involved disciplinary proceedings against a Westampton Township patrolman initiated by the township committee. The committee appointed a special prosecutor and a hearing officer. After the hearing, the patrolman was suspended and he appealed to the Law Division, which determined that the disciplinary proceedings were invalid because the township had not complied with the statute, N.J.S.A. 40A:14-118. Specifically, the Law Division determined:
It is apparent from the record in this case, that the Township Committee of Westampton Township has never designated an "appropriate authority" pursuant to this legislation and has not provided any disciplinary machinery of the kind used here.
....
The Westampton Township Code does provide, in Section 10-36 that:
Any member of the [Police] Department who has been convicted of any violation of any of the rules or regulations of such Department by The Township Committee of the Township of Westampton may appeal such conviction in the manner provided by law.
Section 10-37 of the Code also provides that:
Any member of the Police Department of the Township of Westampton shall be subject to ... [discipline] according to the gravity of the offense by the Township Committee....
The Township argues that these provisions must be read as authorizing the hearing which took place in the disciplinary action against Baldinger. Again, however, no ordinance provides for the statutorily required "appropriate authority" and the Code provisions, even if read as the Township argues, are of no effect since they amount to "rules and regulations which must be promulgated by the appropriate authority" according to the statute.
Id. 220 N.J. Super. at 269-71, 531 A.2d 1087.
In the present case the ordinance applicable when the incident occurred provided:
Sec. 2-89. Discipline and efficiency.

*38 Subject to the approval of the manager, the chief of police shall promulgate and from time to time revise and enforce, a manual of police discipline, practices and procedures for the better administration of the work of the department, and for the discipline and efficiency of the police force. (Ord. No. 1395, § 13.4)
Sec. 2-91. Disciplinary hearings.
Whenever the chief of police is director of the department, the manager shall have power to hear and determine any charge or charges filed against a member of the police force pursuant to chapter 14 of title 40A of the Revised Statutes. (Ord. No. 1395, § 13.6)
Thus, the ordinance provided for oversight by the village manager in the promulgation of rules of police discipline. We conclude that, unlike the circumstances in Baldinger, the village manager was designated the appropriate authority regarding rule adoption and was designated the appropriate authority "to hear and determine" disciplinary charges. Under the statute a "manager" may serve as the "appropriate authority." N.J.S.A. 40A:14-118. See N.J.S.A. 40:69A-95 for the powers and duties of a municipal manager under the council-manager form of municipal government. Utilization of the manager in this role contributes appropriately to at least one of the Legislature's purposes in enacting the statute, described by Judge Simpson as "the legislative intent to create a system with familiar checks and balances to avoid the tyranny of absolute power." Falcone, supra, 199 N.J. Super. at 553, 489 A.2d 1260.
We conclude that the administrative law judge erred when he ruled that the ordinance "unlawfully empowers the chief of police to promulgate and from time to time revise a manual of police discipline, practices and procedures." The judge erred in rejecting the significance of the ordinance's requirement that promulgation of the rule was "subject to the approval of the manager." We perceive no violation of the statute in authorizing the Village's chief professional law enforcement officer to apply his expertise to the preparation of appropriate rules and regulations governing conduct within the police department, as long as the power of final approval, which includes the implied power to reject and revise, is reserved to an appropriate civilian authority.
*39 The absence from the ordinance of the phrase "appropriate authority" in describing the village manager is of no consequence on this record because the ordinance clearly delegated to the manager functions assigned to the appropriate authority by N.J.S.A. 40A:14-118, and the manager's written approval of the police department rules is in the record. The manager's status as the appropriate authority is consistent with the substantial power granted to that office in the council-manager form of government and is also supported in other sections of the applicable ordinance. The police department's table of organization is "subject to the approval of the manager" who is also authorized to appoint "traffic guards." As previously indicated, the manager hears and determines charges filed against members of the department.
Although not necessary to our decision, we question whether the absence of properly adopted disciplinary rules would preclude disciplinary action in this case. "It has been held that a finding of misconduct by a police officer need not be predicated on the violation of any particular department rule or regulation." In re Phillips, 117 N.J. 567, 576, 569 A.2d 807 (1990). In Phillips the Court upheld the demotion of a police chief to patrolman. In doing so, the Court observed:
Thus, even without considering the specifics of the disciplinary charges, we find that the evidence was sufficient to support the trial court's finding that Phillips deviated from the high standard of care imposed on police officers and implicit in all departmental regulations by his actions on December 10, 1985. He failed to exercise the good judgment required of an armed police officer, admittedly obligated to respond to emergencies by drinking and driving and thus impairing his ability to uphold the law. That he did so while off-duty does not mitigate his actions.
Id. at 577, 569 A.2d 807. See also City of Asbury Park v. Dept. of Civil Service, 17 N.J. 419, 429, 111 A.2d 625 (1955) (finding of misconduct unbecoming a police officer "need not be predicated upon the violation of any particular regulation or rule").
Similarly, in In re Emmons, 63 N.J. Super. 136, 164 A.2d 184 (App.Div. 1960) we upheld appellant's suspension for "conduct *40 unbecoming a police officer" based on the officer's refusal to cooperate in an examination to determine his sobriety following an off-duty automobile accident. We stated:
Nor need a finding of misconduct be predicated upon the violation of any particular rule or regulation, but may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct. Asbury Park v. Department of Civil Service, 17 N.J. 419, 429 [111 A.2d 625] (1955).
Id. 63 N.J. Super. at 140, 164 A.2d 184. And we defined "conduct unbecoming an officer."
The phrase is an elastic one. It has been defined as "any conduct which adversely affects the morale or efficiency of the bureau * * * [or] which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." Zeber Appeal, 398 Pa. 35, 43, 156 A.2d 821, 825 (Sup.Ct. 1959).
Ibid. Accord In re Tuch, 159 N.J. Super. 219, 387 A.2d 1199 (App.Div. 1978).
In the present case, Hartmann and Smith are alleged to have engaged in conduct which, if proved, violated an implicit standard of good behavior applicable to police officers and, at the very least, cast doubt on their possession of the maturity and judgment required of armed police officers.
The Final Administrative Action of the Merit System Board is reversed and the case is remanded to the Merit System Board for further proceedings.