802 A.2d 596 (2002)
353 N.J. Super. 333
Bryan GRUBB, Plaintiff-Appellant,
v.
BOROUGH OF HIGHTSTOWN, Defendant-Respondent.
In the Matter of Bryan Grubb.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 2002.
Decided July 19, 2002.
*597 Francis J. Hartman, Moorestown, argued the cause for appellant (Attorneys Hartman, attorneys; Deirdre K. Hartman, on the brief).
Steven P. Goodell, Princeton, argued the cause for respondent (Herbert, Van Ness, Cayci & Goodell, attorneys; Mr. Goodell, on the brief).
Before Judges SKILLMAN, CARCHMAN and WELLS.
The opinion of the court was delivered by CARCHMAN, J.A.D.
Plaintiff Bryan Grubb is a former police officer who was convicted of possession of *598 steroids and official misconduct, and then forfeited his position pursuant to statute. See N.J.S.A. 2C:51-2. After his conviction was reversed on appeal, see State v. Grubb, 319 N.J.Super. 407, 725 A.2d 707 (App.Div.1999), certif. denied, 161 N.J. 333, 736 A.2d 526 (1999), defendant Borough of Hightstown (Borough) initiated disciplinary proceedings, followed by a hearing, which resulted in plaintiff's being terminated "permanently" from his job. The Law Division affirmed. Plaintiff now appeals from that determination as well as certain interlocutory rulings decided against him.
Although plaintiff raises a number of issues on appeal, his core arguments are that: 1) the Borough had no jurisdiction to discipline and terminate him because it had never reinstated him as an employee after forfeiture; 2) the Borough was precluded from proceeding based solely on evidence that had been gathered during the criminal investigation; 3) the charges were untimely and filed in violation of his procedural rights; 4) the hearing officer and the trial court made incorrect evidentiary rulings; and 5) the evidence forming the basis of his removal was insufficient because it was not credible.
We reject plaintiff's arguments and affirm. We conclude that although the Borough did not formally enact a resolution reinstating plaintiff, the procedural posture of the case, including the language of the termination resolution and plaintiff's pursuit of reinstatement, provided a sufficient basis for the Borough to bring disciplinary charges against plaintiff. We further conclude that the charges were timely filed and were established by competent and credible evidence.
Most of the facts relevant to the underlying criminal charges forming the basis of the disciplinary proceedings are set forth in our prior opinion in Grubb, supra, 319 N.J.Super. at 411-14, 725 A.2d 707, which we incorporate. We supplement those facts with the substantial procedural history relevant to consideration of the issues on this appeal.
Plaintiff served as a municipal police officer in the Borough since 1989. The Borough is not a civil service jurisdiction. On March 28, 1995, he was arrested after an investigation conducted by the Edison Police Department and the Narcotics Task Force of the Middlesex County Prosecutor's Office. According to Kevin Hopkins, the Borough's police chief, the Borough had no previous knowledge that the investigation was being conducted and Hopkins learned of the arrest that same day when he received a copy of the charges from the prosecutor's office.
On March 29, 1995, plaintiff was provided with a written "NOTICE OF SUSPENSION." The notice informed plaintiff that he had been charged "with the crimes of Possession and Possession with intent to distribute anabolic steroids in the Township of North Brunswick," and "[t]herefore, in accordance with N.J.S.A. 40A:14-149.1, the Police Department Rules and Regulation 7:3-3, and Section 6-5A(7) of the Hightstown Borough Personnel Policy," plaintiff was suspended without pay until the charges "are disposed of at trial, or otherwise terminated."
Plaintiff was indicted on October 10, 1995, for various charges related to the sale of steroids and other drugs. Following plaintiff's conviction and sentencing and pursuant to the State's application, the trial judge ordered plaintiff to forfeit his position as a police officer in the Borough and disqualified him from holding any state employment or office of public trust. See N.J.S.A. 2C:51-2.
On July 7, 1997, the Borough passed Resolution 213-97, in which it recognized *599 that plaintiff had been suspended without pay and further acknowledged the forfeiture of his office pursuant to N.J.S.A. 2C:51-2. The resolution directed the Borough administrator and the police chief
to take all necessary administrative actions in order to assure that the Court-ordered forfeiture of office is duly recorded in the Borough's personnel records and that said records indicate that Mr. Grubb's employment relationship with the Borough [be] terminated upon his conviction on May 9, 1997, in accordance with N.J.S.A. 2C:51-2(b)(2).
Significantly, the resolution also stated that the authorized actions "in no way constitute a waiver of the Borough's rights to institute departmental charges against Mr. Grubb, in accordance with the provisions of N.J.S.A. 40A:14-147, in the event of a successful appeal of the criminal conviction." Between the date of his suspension and the date of his termination, plaintiff was never served with any notice of disciplinary action and no departmental charges were filed. On May 29, 1997, Hopkins drew up a list of charges "just for [his] own edification," but never served them on plaintiff.
On March 19, 1999, we reversed plaintiff's conviction and entered a judgment of acquittal. See Grubb, supra, 319 N.J.Super. at 410, 725 A.2d 707. On July 8, 1999, the Supreme Court denied the State's petition for certification. See State v. Grubb, 161 N.J. 333, 736 A.2d 526 (1999).
Plaintiff pursued his reinstatement. On August 17, 1999, plaintiff's attorney wrote to Hopkins:
In light of Mr. Grubb's complete vindication he is entitled to return to his position at the Hightstown Police Department. Would you kindly advise when he should report for duty? Is there anything to be completed prior to Mr. Grubb's return to the Department?
On August 19, 1999, the Borough's attorney responded by enclosing six notices of formal charges that had been prepared and filed that day by Hopkins and delivered to plaintiff's home. As to plaintiff's reinstatement request, Hopkins stated that "[i]n view of the pending disciplinary charges, and other issues involved with the requested reinstatement," he would review the request.
The "NOTICE OF FORMAL CHARGES" identified plaintiff as a Patrolman. The charges of which plaintiff was ultimately found guilty were:
8:1.13; Associating, fraternizing or business transactions at any time, or in any manner whatsoever, with known criminals or persons engaged in unlawful activities;
[2] 8:1.6K; Conduct unbecoming an employee in the public service.
[3] 3:1.29; Withholding information concerning criminal activity.
SPECIFICATION: Specifically, during an approximate two year period ending March 28, 1995, did meet with a person or person known to engage in unlawful activities, and did, sell, purchase and/or exchange with those persons anabolic steroids and prescription medications.
Finally, the notice advised plaintiff: "YOU ARE HEREBY SUSPENDED PENDING DETERMINATION OF THE HEARING" and that "[u]nless you satisfactorily explain or defend the above charge(s), you will be subject to the penalty or penalties checked below." The penalties included suspension for a specific number of days, demotion, fine, removal, resignation not in good standing, or other disciplinary action. The box for "REMOVAL" was checked as the penalty.
The Borough communicated with the Division of Criminal Justice regarding plaintiff's return and was advised on August 23, *600 1999, that "[t]he reinstatement to active duty of a police officer" was not the same as an initial appointment. Since plaintiff had been absent from active duty for a substantial period of time, the Division recommended that the Borough require that plaintiff complete the police training course before resumption of duty.
On August 26, 1999, the Borough's attorney wrote to plaintiff's attorney regarding plaintiff's request for reinstatement:
The Borough recognizes that the applicable statutes do provide for reinstatement "subject to any disciplinary proceedings or administrative action." Therefore, in view of the severity of the charges which have been filed against Mr. Grubb, and the significant issues raised by [the Division of Criminal Justice], the Chief has determined that reinstatement must be held in abeyance until such time as the disciplinary charges are resolved. If the disciplinary charges are ultimately resolved in Mr. Grubb's favor, reinstatement would be implemented, upon agreement by the Borough and Mr. Grubb concerning timing, training, back pay and related issues, or as judicially ordered. In addition, Mr. Grubb would have to undergo the usual background check and physical and psychological testing which would be required of any new officer or officer returning to duty after a four year absence.
Therefore, it would be inappropriate and premature to allow Mr. Grubb to report for duty at this time ....
Plaintiff then moved before the Borough Council, not for immediate reinstatement, but to dismiss the charges on the basis that they were not filed within the forty-five day period mandated by N.J.S.A. 40A:14-147. On September 21 and 22, 1999, hearings solely on the motion to dismiss for untimeliness were held before the mayor and council members. At the hearings, Hopkins stated that at no time did the Hightstown Police Department conduct any internal affairs or other investigation of the matter, and that he had never directed it do so. He agreed that he first learned of plaintiff's arrest on March 28, 1995, and that, at that time, his department was not conducting any investigation of plaintiff; that, prior to plaintiff's conviction, he had never requested any information regarding the prosecutor's investigation and never saw the indictment; that he had no access to the prosecutor's files; that he spoke to the prosecutor only twice regarding the matter; and that he had conducted no review of the evidence until August 19, 1999. He agreed that the factual bases for those charges were substantially the same as the charges he later brought on August 19, 1999, and when he prepared the charges on that date, he relied on copies of the investigative reports, witness statements and the trial transcripts in the possession of the Borough attorney.
The motion was denied, and plaintiff filed a complaint in lieu of prerogative writs in the Law Division challenging that decision. Judge Feinberg upheld the filing of the charges as timely and dismissed the complaint. See Grubb v. Borough of Hightstown, 331 N.J.Super. 398, 415, 751 A.2d 1119 (Law Div.2000). The judge found that the "policy inherent" in the statute was "to prevent an internal investigation and a criminal investigation from proceeding at the same time...." Id. at 406-07, 751 A.2d 1119. She rejected plaintiff's argument that the forty-five day exception applied only when the department initiates a formal active "concurrent" investigation as "neither reasonable nor beneficial to the interests of the officer." Id. at 410, 751 A.2d 1119. To require a department to file disciplinary charges and *601 proceed with hearings prior to disposition of the criminal charges would be "contrary to the rights afforded to other citizens" and deprive the department of the complete record and appellate rulings developed during the criminal proceedings. Id. at 412, 751 A.2d 1119.
Plaintiff also asserted that the department failed to comply with its own regulations that required charges to be filed "within a reasonable time after which the existence of the alleged or suspected misconduct is made known, or should have been made known, to the department of Police." Id. at 412-13, 751 A.2d 1119. The judge found that the definition of "reasonable" in the regulations must be construed in conjunction with the time requirements set forth in N.J.S.A. 40A:14-147, which governed the applicable periods. Id. at 413, 751 A.2d 1119.
The hearing then resumed before the designated hearing officer, David Schroth, a retired Superior Court Judge. For the first time, plaintiff moved to dismiss the charges on the basis that the Borough had no jurisdiction to consider disciplinary charges against him as his employment as a Borough police officer had been terminated by virtue of Resolution 213-97 and under N.J.S.A. 2C:51-2, which required the forfeiture of his position upon conviction. He contended that "[i]t requires an additional resolution be passed reinstating him to his position of employment in order to have jurisdiction over him." The Borough argued that "once the decision was overturned, then the basis for the original termination was gone" and "[t]hereafter, they deemed him to be back on the force...."
The hearing officer found that when the conviction was reversed, the resolution was "nugatory," and that "[i]t means nothing, has no substance." He also rejected plaintiff's contention that the jurisdiction argument could be appropriately raised at any time, and stated that the motion should have been raised preliminarily.
Plaintiff then stated that he wished to waive his right to a hearing and appeal the charges in accordance with the provision of N.J.S.A. 40A:14-147, that "[t]he law enforcement officer may waive the right to a hearing and may appeal the charges directly to any available authority specified by law or regulation, or follow any other procedure recognized by a contract, as permitted by law." The hearing officer denied this motion on the basis that the provision had to be invoked "before the commencement of this proceeding," noting that "this proceeding is well underway."
Even though testimony had commenced, plaintiff filed another complaint in lieu of prerogative writs, seeking temporary restraints and pressing the waiver issue. The judge denied the request and concluded that plaintiff was not entitled to relief. See Grubb v. Borough of Hightstown, 333 N.J.Super. 592, 597-98, 756 A.2d 639 (Law Div.2000).[1]
The hearing resumed, and the Borough, relying primarily on facts adduced at the criminal trial and the prosecutor's investigation and witnesses, addressed the specific disciplinary charges. Following the presentation of these proofs, the Borough provided additional proofs to address the specifications dealing with fraternization, withholding information, failure to report and neglect of duty. Hopkins noted that *602 plaintiff had no official reason to associate with Vincent Zarlenga, who had been previously convicted of intent to distribute steroids, or Prince Brown, another individual engaged in the sale of steroids, and that he had not reported their illegal activities.
Hopkins also provided additional proofs as to plaintiff's suspension and reinstatement. When the Supreme Court denied certification of the appeal in July 1999, Hopkins took no steps to reinstate plaintiff. Instead, in August 1999, when Hopkins and the Council decided to file disciplinary charges against plaintiff, they "looked at [plaintiff's employment status] as it was still a continuation of the suspension." In fact, throughout the entire process, it appears that all parties, including plaintiff, Hopkins and the Council, viewed plaintiff as on suspension without pay rather than having been terminated. As Hopkins noted at the hearing, he believed plaintiff was "still on a suspension status." The department's regulations, section 8:1.5, provided that an "appointing authority," which in 1995, was the Borough administrator, "may suspend without pay... an employee due to inefficiency, incompetency, misconduct, negligence, insubordination, or for other sufficient cause...." [2] Although neither Hopkins nor the Borough served plaintiff with a preliminary notice of disciplinary charges at the time of the original suspension, plaintiff neither challenged that lack of action nor challenged his status during the pendency of the criminal charges.
Plaintiff's testimony from his suppression hearing contained admissions that he had possessed cytomel and aldactazide prior to March 1995, and that he had ordered those substances from abroad; that he had purchased Clenbuterol in 1993, during a vacation in Mexico, where it was available over the counter, and that he brought some home and used it; that in 1993 or 1994, he had purchased Lebatrona, which was a brand of cytomel, from Zarlenga; that he had offered to mail the Clenbuterol, aldactazide and cytomel to Zarlenga, and that, when he set out from his home, he intended to give them to Zarlenga; that he had two vials of testosterone in his home on March 28; and that he admitted he used testosterone "a few times" from 1985 to 1993. Plaintiff also denied that he intended to accept the Stanozol from Zarlenga, and asserted that he last used steroids in 1993. He admitted that he used them "once" when he was a police officer.
At the close of evidence, plaintiff moved to dismiss the charges on the basis that the department's allegations relied solely on the investigation by the Middlesex County Prosecutor's Office, which was conducted in violation of plaintiff's due process rights and thus in violation of departmental regulations. The hearing officer denied the motion. Plaintiff's motion for a dismissal based on due process entrapment was also denied as was his motion to dismiss on the grounds that the police had insufficient probable cause to effect plaintiff's arrest.
The hearing officer issued his written decision in June 2000. He found the witnesses to be "very creditable and totally believable" and accepted their testimony "as being totally true and accurate." Regarding charge one, which involved fraternizing with known criminals, he found plaintiff "obviously guilty" of that charge on the basis that "[t]he evidence makes it vividly clear that Bryan Grubb associated *603 with Zarlenga and Brown over a long period of time and that he got steroids from Prince Brown in the fall of 1994," and "[i]n addition he dealt illegally with Vince Zarlenga, a known and convicted criminal, and obviously a party engaging in unlawful activities."
On charge two, conduct unbecoming an employee, the hearing officer found that the "entire case" was "replete with evidence of Bryan Grubb conducting himself in a manner unbecoming an employee in the public service," and that "[o]ne need only look at his Oath of Office, which is in evidence, to establish how obviously unbecoming and illegal his actions were." With respect to charge three, which alleged that plaintiff withheld information concerning criminal activity, the hearing officer concluded that the evidence established plaintiff "was obviously violating the law over an extended period of time and that he was doing so with others," and "of course did not disclose the facts or events" to his police department. Charges four through nine were dismissed as duplicative.
The hearing officer concluded that plaintiff "was violating the law from day one and continued to do so until the time of his arrest." He found that plaintiff "bought and sold steroids, non-prescription drugs, and controlled dangerous substances for years while a Hightstown Police Officer" and that "an avalanche of completely and totally believable evidence ... establishes Bryan Grubb's guilt beyond a reasonable doubt."
As to plaintiff's claims of entrapment, the hearing officer stated: "[E]ntrapment is not relevant in these proceedings, in that it is not a defense in this hearing. Furthermore, I didn't hear any evidence that even touched on the subject matter." The hearing officer issued the "very strong recommendation that Bryan Grubb be fired and permanently terminated from ever being a police officer in Hightstown Borough."
Plaintiff filed an appeal in the Law Division. On July 17, 2000, the Council adopted a resolution to "accept the conclusions and recommendations of the hearing officer that said Bryan Grubb be permanently terminated as a member of the police force of the Borough of Hightstown."
In the Law Division proceeding, the parties offered testimony to supplement the record. The focus of the inquiry was whether the Borough had properly adopted rules and regulations that governed the disciplinary proceeding. The Borough argued that the disciplinary proceedings were premised not only on police regulations and policies, but on statutory authority as well.
Judge Feinberg rejected plaintiff's arguments. She concluded that a police officer can be prosecuted for disciplinary infractions even in the absence of properly adopted rules. She also found that the Borough's witnesses were credible and their testimony reliable, but agreed that she would not consider the intercepted conversations between plaintiff and Zarlenga.
The judge rejected plaintiff's arguments that due process violations based on entrapment precluded the disciplinary prosecution and found that "plaintiff's constitutional rights were fully protected in this matter." She found that the Borough's procedures "complied with all the mandatory requirements" and "were appropriate in this matter." The judge determined that the evidence seized from plaintiff's home was properly admitted and relevant to the charge that plaintiff traded in steroids and prescription medications during a two-year period and that the charge was "supported by the fact that prescription *604 medications, steroids, and syringes were found in his home." She concluded that plaintiff was guilty of the charges and affirmed the permanent termination of his employment as a Hightstown police officer.
On appeal, plaintiff raises the following issues:
I. THE DEFENDANT LACKED JURISDICTION TO FILE CHARGES AGAINST PLAINTIFF AND AS SUCH THE CHARGES MUST BE DISMISSED.
II. THE DEFENDANT FAILED TO TIMELY FILE DISCIPLINARY CHARGES AGAINST GRUBB AND AS SUCH THE CHARGES MUST BE DISMISSED.
A. A PLAIN READING OF THE STATUTE REQUIRES DISMISSAL OF THE CHARGES AS THERE WAS NO "CONCURRENT" INVESTIGATION.
B. THE CHARGES ARE UNTIMELY BECAUSE CHIEF HOPKINS HAD "SUFFICIENT INFORMATION" LONG BEFORE AUGUST OF 1999.
C. HIGHTSTOWN FAILED TO COMPLY WITH ITS OWN DEPARTMENTAL RULES AND REGULATIONS.
III. THE RULES AND REGULATIONS OF HIGHTSTOWN TOWNSHIP POLICE DEPARTMENT WERE NOT PROMULGATED AND ADOPTED IN ACCORDANCE WITH THE REQUIREMENTS OF N.J.S.A. 40A:14-118, THUS CHARGES BASED UPON SAID RULES AND REGULATIONS ARE UNENFORCEABLE REQUIRING DISMISSAL OF THE CHARGES.
A. HIGHTSTOWN APPROPRIATE AUTHORITY FAILED TO ADOPT AND PROMULGATE THE RULES AND REGULATIONS OF THE POLICE DEPARTMENT RENDERING THEM MOOT.
B. WHERE [A] POLICE OFFICER HAS BEEN CHARGED WITH SPECIFIC VIOLATIONS OF RULES AND REGULATIONS[, THE] DEPARTMENT CAN NOT LATER ASSERT CHARGES WERE FOR INFRACTIONS OF "IMPLICIT STANDARD OF BEHAVIOR."
IV. THE TOWNSHIP'S SUSPENSION OF GRUBB WAS IN VIOLATION OF NEW JERSEY STATUTE AS WELL AS THE POLICE DEPARTMENT RULES AND REGULATIONS THUS RENDERING THE SUBSEQUENT CHARGES INVALID.
A. STATUTE.
B. RULES AND REGULATIONS.
V. THE TOWNSHIP HAS FAILED TO MEET ITS BURDEN OF A PREPONDERANCE OF THE CREDIBLE EVIDENCE AND THEREFORE THE CHARGES MUST BE DISMISSED.
A. THE "EVIDENCE" IS WITHOUT CREDIBILITY OR RELIABILITY.
B. THE TOWNSHIP HAS FAILED TO PROVE THE SPECIFICATIONS UPON WHICH THE CHARGES ARE BASED.
C. THE TESTIMONY OF INVESTIGATOR WEITZ IS INCREDIBLE AND UNRELIABLE.
*605 D. THE TESTIMONY OF SERGEANT ENGRAM IS INCREDIBLE AND UNRELIABLE.
E. THE FOLLOWING TESTIMONY SHOULD HAVE BEEN PERMITTED INTO THE RECORD IN DIRECT RESPONSE TO ADMISSIONS READ INTO THE RECORD BY THE TOWNSHIP.
F. ANY REFERENCES TO ITEMS CONFISCATED IN THE GRUBB RESIDENCE SHOULD HAVE BEEN DISREGARDED AS IRRELEVANT TO THE FACTUAL SPECIFICATION UNDER THE CHARGES.
VI. TERMINATION OF GRUBB IS NOT WARRANTED EVEN IF CHARGES ARE SUSTAINED.
We first address plaintiff's argument that the Borough lacked "jurisdiction" to pursue the disciplinary charges since after his conviction was overturned, he was no longer an employee of the Borough. Plaintiff insists that he could not be disciplined unless he was first reinstated.
Plaintiff's removal from office did not arise out of the Borough's July 7, 1997 resolution terminating his employment, but by the mandate of N.J.S.A. 2C:51-2a(1), requiring the forfeiture of office following a conviction for a third-degree crime. The forfeiture takes effect immediately upon conviction, N.J.S.A. 2C:51-2b(1), and the trial judge in the criminal proceedings so ordered.
In his argument, plaintiff focuses on the Borough's July 7, 1997 resolution terminating plaintiff and suggests that absent any new resolution reinstating plaintiff, his lack of employment status precluded the Borough from pursuing disciplinary charges against him.
The argument is specious. The Borough's resolution merely memorialized that which had been accomplished as a matter of statutory mandate. Nothing cited by plaintiff in either the statute or a Borough's ordinances enabled the Borough to terminate plaintiff's employment by resolution alone absent compliance with the Borough's statutory obligation to demonstrate that "the conduct giving rise to the conviction demonstrates that the person is unfit to hold the office, position or employment." N.J.S.A. 2C:51-2g.
Plaintiff's reliance on Rosetty v. Township Comm. of the Township of Hamilton, 82 N.J.Super. 340, 347, 197 A.2d 600 (Law Div.1964), aff'd o.b., 96 N.J.Super. 66, 232 A.2d 455 (App.Div.1967), is misplaced. Rosetty was a suspended employee, not one subject to forfeiture; at all times he remained a township employee.
The forfeiture statute addresses the circumstances presented here. N.J.S.A. 2C:51-2c provides: "If the conviction be reversed or the order of forfeiture be overturned, he shall be restored, if feasible, to his office, position or employment with all the rights, emoluments and salary thereof from the date of the forfeiture." The effect of the forfeiture is negated by the reversal of the conviction removing the forfeiture bar as a basis for reinstatement, but that does not entitle plaintiff to reinstatement as the statute also imposes a condition of feasibility.
N.J.S.A. 2C:51-2c creates a qualified right to reinstatement. The language "if feasible" denotes a "for cause" standard imposing a condition on the right to reinstatement. Compare Peltack v. Borough of Manville, 547 F.Supp. 770, 774 (D.N.J. 1982). The practical impact of this interpretation under the facts presented here permits plaintiff to perfect his right to reinstatement, but also enables the Borough to press its claim that plaintiff should *606 be terminated based on disciplinary violations.
Plaintiff was properly suspended pending resolution of the criminal charges. Plaintiff never challenged that suspension. Upon conviction, the provisions of N.J.S.A. 2C:51-2 became operative, and after reversal and denial of certification by the Supreme Court, plaintiff did not seek to overturn the order of forfeiture, but simply inquired of the municipality when he could return to work. Upon such inquiry, the Borough exercised its prerogative of establishing "cause" and pressed forward with its disciplinary chargesa right not only contemplated by N.J.S.A. 2C:51-2, but by the language of N.J.S.A. 40A:14-149.2, which provides:
If a suspended police officer is found not guilty at trial, the charges are dismissed or the prosecution is terminated, said officer shall be reinstated to his position and shall be entitled to recover all pay withheld during the period of suspension subject to any disciplinary proceedings or administrative action.

[Emphasis added.]
A harmonious reading of these related statutes indicates that the Legislature contemplated circumstances whereby an acquitted officer is presumptively entitled to return to his employment, but a governing body and the public at large are entitled to protection against an officer whose conduct warrants termination. A practical reading of these statutes under the facts presented here warrants the conclusion that the municipality need not reinstate the offending officer only to simultaneously serve him with the "for cause" disciplinary charges. The unqualified right to be reinstated must be considered with the equally relevant right of a municipality to press its claim that the officer is not worthy of reinstatement, but subject to termination. Applying that statutory scheme here leads us to conclude that the Borough acted properly by pressing forward with its disciplinary proceedings.
Plaintiff's belated argument regarding jurisdiction was just that. Neither party to these proceedings acted under the assumption that plaintiff's forfeiture was still effective. Rather, all considered that he was subject to disciplinary charges, and any return to work or reinstatement would await disposition of those charges. The issue of "jurisdiction" was not raised until the hearing had commenced and two actions in lieu of prerogative writs had been tried and determined adverse to plaintiff. It was plaintiff who assumed he could return to work without more. The Borough acted in the same manner and pressed forward with the charges, even inquiring of the Police Training Commission regarding plaintiff's return to employment. The parties' actions themselves belie any suggestion that the Borough lacked jurisdiction to proceed on its charges.
As to the issues raised by Point II, we have carefully considered the record and conclude plaintiff's arguments in this regard are without merit. We affirm substantially for the reasons set forth in Judge Feinberg's opinion. See Grubb, supra, 331 N.J.Super. at 404-13, 751 A.2d 1119.
The issue raised in Point III is likewise without merit. N.J.S.A. 40A:14-118 provides:
The governing body of any municipality, by ordinance, may create and establish, as an executive and enforcement function of municipal government, a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof. Any such ordinance shall, in a manner consistent with the form of government adopted by *607 the municipality and with general law, provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members.
We have held that the statute permits the municipality's chief law enforcement officer to use his or her expertise to prepare the rules "as long as the power of final approval, which includes the implied power to reject and revise, is reserved to an appropriate civilian authority." Hartmann v. Police Dep't of the Village of Ridgewood, 258 N.J.Super. 32, 38, 609 A.2d 61 (App.Div.1992). This is precisely the procedure utilized by the Borough.
Regarding the adoption and promulgation of rules and regulations of the Borough's police department, Ordinance 1998-7, Section 2-19.6a, provided:
The Borough Council shall have the power, by resolution, to adopt such rules and regulations for the government and discipline of the Police Department as are not inconsistent with New Jersey law or this section. The Chief of Police shall have the power to adopt such additional rules, regulations, procedures and orders as shall be deemed necessary by him to promote the efficiency of the Department. Any such rule, regulation, procedure or order of the Chief of Police shall be sent immediately to the Borough Administrator and to the Borough Council, and they may be modified or annulled by resolution or motion of the Borough Council.
Thus, in accordance with our holding in Hartmann, the Borough's ordinance properly reserved to the civilian administrator and council the power of final approval over any regulations adopted by the police chief.
Furthermore, as the Borough notes, the existence and content of these regulations were not unknown to plaintiff. The agreement between the Borough and the Policeman's Benevolent Association recognized that the department's regulations were "in full force and effect ... and are operative as to the employees" unless contravened by specific provisions in the agreement. On December 1, 1989, plaintiff signed an acknowledgment that he had received "the Rules & Regulations of the Hightstown Police Department as approved by Borough Council during May 1989."
Moreover, we have consistently held that "a finding of misconduct by a police officer need not be predicated on the violation of any particular department rule or regulation." In re Phillips, 117 N.J. 567, 576, 569 A.2d 807 (1990) (quoting In re Emmons, 63 N.J.Super. 136, 140, 164 A.2d 184 (App.Div.1960)); see also Marjarum v. Township of Hamilton, 336 N.J.Super. 85, 99, 763 A.2d 796 (App.Div. 2000); Hartmann, supra, 258 N.J.Super. at 39-40, 609 A.2d 61. The Borough's actions were predicated on its contention that plaintiff had engaged in the purchase and sale of illicit substances, an offense contrary to the principles of law enforcement that plaintiff was hired to uphold. Based on these allegations, the Borough was entitled to discipline plaintiff.
Plaintiff's complaint in Point IV that the suspension and removal violated N.J.S.A. 40A:14-147 is without merit. Plaintiff cites out-of-context the language in N.J.S.A. 40A:14-147, which states an officer may be removed or suspended "only upon a written complaint setting forth the charge or charges ...." He argues that this procedure must be followed prior to suspension or termination and that his procedural due process rights were violated because he was deprived of his property interest in his job when he was *608 suspended and then terminated pursuant to resolution, with no hearing and prior to the filing of a written complaint.
Plaintiff was afforded complete procedural due process prior to his termination. Contrary to plaintiff's assertion that he was terminated by resolution prior to the filing of the complaint and with no hearing, in fact, he was terminated pursuant to the forfeiture statute after he was afforded a full hearing at his criminal trial. The Borough's resolution merely acknowledged what the forfeiture statute already had accomplished and directed that the Borough's records be made consistent with that outcome.
Furthermore, the statute did not require the filing of a written complaint until disposition of the criminal investigation. See Grubb, supra, 331 N.J.Super. at 407, 751 A.2d 1119. Plaintiff's suspension notice of March 29, 1995, notified him that he was suspended in accordance with the Department's emergency suspension provision, section 7:3.3, which provides that no officer may be suspended or suffer any loss in benefits until after he has been found guilty at a departmental hearing, "except in cases of a severe nature, when the Chief of Police deems the suspension of the member of immediate necessity for the safety of the public or the welfare of the department." The suspension notice specified that it was based on the existence of pending criminal charges. That is more than sufficient to meet the objective of the statute and protect the officer's due process concerns.
Plaintiff also asserts that his suspension violated the rules and regulations because section 7:4.3 requires that complaints forwarded by the prosecutor's office should be "investigated immediately." Specifically, section 7:4.3 states:
Complaints forwarded to this Department from the Prosecutor's Office, Federal Bureau of Investigation, State and Federal Attorney General's Office, Sheriff's Office, etc., will be investigated immediately by the bureau commander or his designee by order of the Chief of Police.... The investigator shall pursue the investigation as rapidly as possible.
Contrary to plaintiff's interpretation of section 7:4.3, the provisions of section 7:4.4 make it clear that the mandatory aspects of section 7:4.3 do not apply where criminal allegations are involved. Section 7:4.4(D) describes the investigation process, and specifically provides:
Occasionally, when a case indicates possible criminal action against an employee, the Chief of Police will be notified immediately and there is no need to proceed further. If a decision is made to proceed criminally, the detective division shall be requested to initiate a criminal investigation. This will guarantee due process of law and employee constitutional rights. If an investigation is initiated where there is suspicion of criminal activity, employee constitutional rights could be compromised, therefore, he shall be afforded all rights under the law.
Section 7:4.3 applies to non-criminal complaints against an officer that are forwarded from another law enforcement agency. Under section 7:4.4, all internal investigation should cease if there is a possibility of criminal charges. Such a procedure avoids duplication of efforts, which not only protects plaintiff, but the interests of the Borough and the prosecuting agency as well.
Finally, we conclude that the credible evidence before both the hearing officer and Judge Feinberg at the trial de novo in the Law Division well supported the result. Both the hearing officer and Judge Feinberg made adequate and appropriate findings both as to the credibility of the witnesses and the sufficiency of the evidence. *609 We reach a similar result regarding the evidential rulings made and affirm substantially for the reasons set forth in Judge Feinberg comprehensive oral opinion of April 20, 2001. The ultimate finding that plaintiff, a police officer, was engaged in criminal activity was well supported by the record. We perceive of no other appropriate remedy than termination and reject any suggestion by plaintiff that the penalty was too harsh.
Affirmed.
NOTES
[1] Although plaintiff noted that it was appealing from the order of April 28, 2000, memorializing this decision, plaintiff's brief fails to include any argument addressing this issue. We, therefore, deem it to be abandoned and decline to address it. See Liebling v. Garden State Indem., 337 N.J.Super. 447, 465-66, 767 A.2d 515 (App.Div.), certif. denied, 169 N.J. 606, 782 A.2d 424 (2001).
[2] Although references were made regarding health and other benefits while on suspension, plaintiff made no specific claim for benefits either before the hearing officer or in the Law Division.