**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1677-15T2

IN THE MATTER OF NARESH RAJRAM,
MONTCLAIR STATE UNIVERSITY.

_____

Argued May 9, 2017 – Decided  May 26, 2017

Before Judges Reisner and Mayer.

On appeal from the New Jersey Civil Service
Commission, Docket No. 2015-1669.

Eugenie F. Temmler argued the cause for
appellant Naresh Rajram (Rabner Baumgart Ben-
Asher & Nirenberg, P.C., attorneys; Ms.
Temmler, of counsel and on the briefs).

Beth N. Shore, Deputy Attorney General, argued
the cause for respondent Montclair State
University (Christopher S. Porrino, Attorney
General, attorney; Melissa Dutton Schaffer,
Assistant Attorney General, of counsel; Ms.
Shore, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent Civil Service
Commission (Pamela N. Ullman, Deputy Attorney
General, on the statement in lieu of brief).

PER CURIAM

Petitioner Naresh Rajram appeals the determination of the Civil Service Commission (Commission) upholding the decision of the administrative law judge (ALJ) terminating his employment with Montclair State University (University). We affirm.

The facts giving rise to the termination of petitioner's employment with the University are detailed in the ALJ's written decision dated October 1, 2015. We summarize the ALJ's findings to explain our disposition of this appeal.

Petitioner was a senior building maintenance worker employed by the University. He was accused of unbecoming conduct toward a female student, A.P., who resided in a University dormitory.[1] A.P. reported petitioner's unwelcome and harassing behavior to the University, which issued a notice of disciplinary action. Petitioner requested a hearing and the matter was referred to the Office of Administrative Law (OAL).

At the OAL hearing, A.P. described the improper conversations and unwelcome conduct initiated by petitioner. A.P. alleged that petitioner took her cellphone without permission and used it to call his phone in order to obtain her cellphone number; sent text messages to A.P. without her consent; and asked A.P. to go with

_____

[1] We shall refer to the female student as A.P. to protect her privacy.

him to a bar and for ice cream. A.P. declined petitioner's overtures and ignored his unwanted text messages. Petitioner also allegedly asked A.P. personal questions about her relationship with a former boyfriend and made other inappropriate inquiries. A.P. testified that she had an exam on the evening she received petitioner's text messages. She was scared and upset by petitioner's text messages, rendering her unable to focus on the exam, which she failed.

In response to A.P.'s accusations during the hearing, petitioner claimed A.P. made up the allegations and text messages. In addition to the testimony of A.P. and petitioner, the ALJ heard from several University employees. He also reviewed screen shots of the text messages allegedly sent to A.P. by petitioner.

In his decision, the ALJ described the demeanor of the witnesses and made meticulous credibility determinations as to testimony of each witness. In assessing credibility, the ALJ found that A.P. had no reason to fabricate her story. The ALJ disbelieved the argument advanced by petitioner's attorney that A.P. invented the incidents and text messages to justify her failing the exam. He also found it improbable that an otherwise "A" student would have failed and exam, but for the unpleasant and distressing encounters with petitioner. The ALJ further noted A.P.'s reluctance to ruin petitioner's career and reputation by

reporting the incidents to the University and filing criminal charges. Overall, the ALJ deemed the testimony of A.P. to be more credible than petitioner's testimony.

Based on his credibility findings, the ALJ concluded petitioner violated University policy by harassing A.P. in violation of N.J.A.C. 4A:2-2.3(a)(6) (conduct unbecoming a public employee). The ALJ determined that asking an underage student to a bar, taking a student's cellphone without permission, and seeking personal information about a student constituted conduct unbecoming a public employee. The ALJ reasoned that public employees are required to act in a professional manner and refrain from overly personal and harassing behavior. The ALJ found petitioner's conduct toward A.P.:

> [M]ore reprehensible [because] an employee such as [petitioner] has access to the dorms where this female student live[d]. Such employees have a heightened responsibility of acting in a professional manner and refrain from acting in an overly personal and harassing behavior. [Petitioner] breached that responsibility. The effect on [A.P.] was palpable as she was frightened and disturbed by the incident. No student, especially as young and impressible as [A.P.] was, should have to be the victim of such harassing behavior.

Having determined that petitioner violated University policy, the ALJ then considered the imposition of an appropriate punishment. In assessing the penalty against petitioner, the ALJ

found petitioner's "reprehensible" conduct warranted petitioner's termination.

The Commission adopted the ALJ's findings and conclusions and affirmed petitioner's termination as a University employee.

On appeal, petitioner argues that the ALJ's findings were unsupported by the evidence. Petitioner also contends the punishment of termination was arbitrary, capricious and disproportionate to the charge.

Appellate courts have "a limited role" in reviewing administrative agency decisions. Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980). We give deference to an agency's determination unless the decision is arbitrary, capricious, or is unsupported by substantial credible evidence in the record. In re Herrmann, 192 N.J. 19, 27-28 (2007); Campbell v. Dep't. of Civil Serv., 39 N.J. 556, 562 (1963). We defer to an agency's findings if they could reasonably have been reached on sufficient credible evidence in the record, "considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

This deferential standard applies to imposition of disciplinary sanctions as well. Herrmann, supra, 192 N.J. at 28

(citing <u>Knoble v. Waterfront Comm'n of N.Y. Harbor</u>, 67 <u>N.J.</u> 427, 431-32 (1975)). When reviewing sanctions imposed by an administrative agency, "appellate courts should consider whether the 'punishment is so disproportionate to the offense, in the light of all of the circumstances, as to be shocking to one's sense of fairness.'" <u>In re Stallworth</u>, 208 <u>N.J.</u> 182, 195 (2011) (citing <u>In re Carter</u>, 191 <u>N.J.</u> 474, 484 (2007)).

The ALJ's findings were based on his detailed credibility determinations. The ALJ concluded that A.P.'s version of the events was more credible than petitioner's version of the events. The ALJ determined that A.P.'s written statement to the police and her oral statements to University employees regarding the incidents did not differ significantly from A.P.'s testimony during the hearing. Additionally, the ALJ found A.P. did not demonstrate animus toward petitioner. Rather, the ALJ found A.P. was concerned about petitioner's career and personal well-being.

On the other hand, the ALJ found petitioner's testimony incredible. If petitioner was truly inquiring about "cricket bats," as he claimed, the ALJ questioned why petitioner would have contacted A.P. late at night. In assessing petitioner's demeanor during the hearing and his explanation of his encounters with A.P., the ALJ concluded petitioner was less credible than A.P.

The Commission's termination of petitioner's employment was based upon the ALJ's detailed findings that petitioner engaged in conduct unbecoming an employee and that petitioner's behavior was sufficiently egregious. Petitioner's behavior toward A.P. violated implicit standards of good behavior. See Hartmann v. Police Dep't of Ridgewood, 258 N.J. Super. 32, 40 (App. Div. 1992). His conduct was especially egregious given A.P.'s age and the fact that petitioner confronted A.P. alone near A.P.'s dormitory room. Petitioner's conduct made A.P. feel unsafe. The University has a responsibility to ensure the safety of its students. Because petitioner never acknowledged any impropriety concerning his contacts with A.P., he failed to understand the importance of the University's policy limiting employee interactions with students. Based upon petitioner's severe and egregious conduct, the Commission concluded that petitioner was unsuitable for employment at a public university, see In re Herrmann, supra, 192 N.J. at 33, and termination was appropriate.

Having reviewed the record, we conclude the Commission's decision was based upon substantial credible evidence in the record. The Commission adopted the ALJ's detailed credibility determinations and fact-findings. We further conclude that petitioner's termination from the University was not so

disproportionate to the offense in this case as to shock our sense of fairness. <u>Stallworth</u>, <u>supra</u>, 208 <u>N.J.</u> at 195.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1677-15T2